## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re:<br><br>PENNY D. GOUDELOCK,<br><br>   Debtor(s). | Bankruptcy Case No. 11-12725-TWD<br><br>Adversary Case No.: 15-01093-TWD |
| SIXTY-01 ASSOCIATION OF APARTMENT OWNERS,<br>   Plaintiff,<br>v.<br>PENNY D. GOUDELOCK,<br>   Defendant. | **DECLARATION OF JOSEPH BALDRIDGE IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

UNDER PENALTY OF PERJURY, Joseph Baldridge deposes and states the following:

 1. I am over the age of 18, have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.

 2. I am the Director of Operations for Sixty-01 Association of Apartment Owners (the "Association"). I am authorized by the Association to make this declaration on its behalf.

 3. I am familiar with the manner and procedures by which the Association's business records are obtained, prepared, and maintained. The records are made by

Declaration of Joseph Baldridge in Support of
Motion for Summary Judgment

Page 1 of 3

Condominium Law Group PLLC
10310 Aurora Ave. N.
Seattle, WA 98133
Tel: (206) 633-1520

persons with knowledge of the matters they record or from information obtained by persons with such knowledge. I have knowledge and/or access to the Association's business records regarding the subject Property, and I have personally reviewed those business records prior to executing this declaration.

4. Sixty-01 Condominiums is a community association of nearly 800 condominium units.

5. Defendant Penny D. Goudelock ("Defendant") was the record owner of real property located at the common address of 13954 NE 60th Way #101, Redmond, WA 98052 (the "Property"). A true and correct copy of a Bargain and Sale Deed recorded in King County under Recorder's Number 20010216000300 is attached hereto as **Exhibit A**.

6. Attached hereto as **Exhibit B** is a true and correct copy of a Trustee's Deed recorded in King County under Recorder's Number 20150420001026. It shows a sale date of the Property of February 26, 2015.

7. During Defendant's ownership of the Property, she enjoyed all the rights and privileges provided to all owners of Sixty-01 Condominiums, including but not limited to maintenance of the condominium structures and common elements, insurance, landscaping, utilities, and other benefits common to community associations.

8. These rights and privileges, along with their associated costs, continued regardless if Defendant occupied the Property.

9. Attached hereto as **Exhibit C** is a true and correct copy of the Declaration and Covenants, Conditions, Restrictions, and Reservations for Sixty-01, A Condominium as recorded under King County Recorder's Number 78083000899 (the "Declaration").

10. Upon my review of Association records, Defendant was delinquent in her assessments owed to the Association as of the date she filed this bankruptcy on March 11, 2011.

11. Based on the instruction of the Board of Directors for the Association, the Association scheduled a sheriff's sale for Demember 2012 in King County Superior Court Case #09-2-36393-5 SEA.

Declaration of Joseph Baldridge in Support of Motion for Summary Judgment

Page 2 of 3

Condominium Law Group PLLC
10310 Aurora Ave. N.
Seattle, WA 98133
Tel: (206) 633-1520

Case 15-01093-TWD    Doc 11-1    Filed 07/21/15    Ent. 07/21/15 14:39:54    Pg. 2 of 80

12. The Association canceled the sale after receiving payment in full from Defendant's lender in December of 2012 which brought her account current through the end of December 2012.

13. Since then, the Association has received no monies from Defendant or any other party for assessments assessed against Unit 101 at Sixty-01 Condominiums.

14. Regular assessments for the Property have been accruing at a rate of $410.22 per month from 2013-2015.

15. A special assessment for increased insurance premiums was also assessed against the Property in 2014.

16. The Association has incurred reasonable attorneys' fees and other costs related to Defendant's delinquency.

17. Plaintiff wishes to pursue its claim against Defendant for failing to pay post-petition assessments in state court, but requests the bankruptcy court to adjudicate the nondischargeability of those assessments.

I HEREBY DELCARE under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

DATED:     July 21, 2015.

_____
Joseph Baldridge

Declaration of Joseph Baldridge in Support of
Motion for Summary Judgment

Page 3 of 3

Condominium Law Group PLLC
10310 Aurora Ave. N.
Seattle, WA 98133
Tel: (206) 633-1520

# EXHIBIT A



AFTER RECORDING MAIL TO
Penny Denise Goudelock
13954 Northeast 60th Way # 101
Redmond, WA 98052

2001021600300
FIRST AMERICAN WD          10 00
PAGE 001 OF 003
02/16/2001 11.18
KING COUNTY, WA

E1801235
02/16/2001 10.39
KING COUNTY WA
TAX        $1,860 00
SALE      $105,000 00          PAGE 001 OF 001

Filed for Record at Request of:
First American Title/Seattle
Escrow Number 7795701A                    1ST AM ③
                                            823241

## BARGAIN AND SALE DEED

Grantor(s) First Horizon Home Loans
Grantee(s) Penny Denise Goudelock, an unmarried person
Abbreviated Legal UNIT 101, BLDG 11B, SIXTY-01, VOL 23, P 44-53
Additional legal(s) on page 2
Assessor's Tax Parcel Number(s) 780417 0050-03

THE GRANTOR First Horizon Home Loans for and in consideration of ONE HUNDRED
FIVE THOUSAND DOLLARS AND NO/100---------- Dollars ($105,000 00), in hand paid, grants,
bargains, sells, conveys, and confirms to Penny Denise Goudelock, an unmarried person the
following described real estate, situated in the County of KING State of Washington
**See Attached Exhibit "A"**
     The Grantor for himself and for his successors in interest does by these presents expressly limit
the covenants of this deed to those herein expressed, and exclude all covenants arising or to arise by statutory or
other implication, and does   hereby covenant that against all persons whomsoever lawfully claiming or to
claim by, through or under said Grantor and not otherwise, he will forever warrant and defend the said
described real estate

Dated February 6, 2001

_Millie D Burkett_
AVP Wells Fargo Home Mtg Inc
as Attorney in Fact

STATE OF ~~WASHINGTON~~ Maryland          }
County of ~~King~~ Frederick                } ss.

     I certify that I know or have satisfactory evidence that _Melanie T Burkett_
_Asst Vice President_        _is_ the person   who appeared before
me, and said person   acknowledged that _she_ signed this instrument, on oath stated that _she is_
authorized to execute the instrument and acknowledge it as the _Asst Vice President_
of _Wells Fargo Home Mortgage_ *
to be the free and voluntary act of such party for the uses and purposes mentioned in this instrument
Dated        _2/12/01_

_Carol A King_

*as Attorney-in-fact for          Notary Public in and for the State of _Maryland_
First Horizon Home Loan          Residing at _1485 New Horizon Way, Frederick, MD_
Corporation                      My appointment expires _4/1/03_

EXHIBIT "A"

UNIT 101, BUILDING 11B, OF SIXTY-01, A CONDOMINIUM, ACCORDING TO DECLARATION THEREOF RECORDED UNDER RECORDING NO. 7808300847, AND ANY AMENDMENTS THERETO. SAID UNIT IS LOCATED ON SURVEY MAP AND PLANS FILED IN VOLUME 23 OF CONDOMINIUMS, AT PAGES 34 THROUGH 53, IN KING COUNTY, WASHINGTON.

Subject To:

| | |
|---|---|
| EASEMENT, INCLUDING TERMS AND PROVISIONS CONTAINED THEREIN | |
| RECORDED | FEBRUARY 26, 1929, MARCH 2, 1929, MARCH 12, 1929, JANUARY 15, 1947, NOVEMBER 30, 1960 AND SEPTEMBER 14, 1970 |
| RECORDING NO | 2520493, 2521324, 2523310, 2524317, 3647731, 5228313 AND 6692856, RESPECTIVELY |
| IN FAVOR OF | PUGET SOUND POWER & LIGHT COMPANY |
| FOR | ELECTRIC TRANSMISSION AND DISTRIBUTION LINES AND OTHER NECESSARY OR CONVENIENT APPURTENANCES |
| AFFECTS | PORTIONS OF THE COMMON ELEMENTS |

SAID EASEMENT WAS MODIFIED BY INSTRUMENTS RECORDED UNDER RECORDING NOS. 6314118 AND 6314119

| | |
|---|---|
| EASEMENT, INCLUDING TERMS AND PROVISIONS CONTAINED THEREIN | |
| RECORDED | MAY 5, 1964 |
| RECORDING NO | 5731982 |
| IN FAVOR OF | OLYMPIC PIPELINE COMPANY, A DELAWARE CORPORATION |
| FOR | PIPELINE WITH NECESSARY APPURTENANCES |
| AFFECTS | PORTIONS OF THE COMMON ELEMENTS |

| | |
|---|---|
| EASEMENT, INCLUDING TERMS AND PROVISIONS CONTAINED THEREIN | |
| RECORDED | MARCH 19, 1971 |
| RECORDING NO | 7103190313 |
| IN FAVOR OF | KING COUNTY WATER DISTRICT NO. 81, A MUNICIPAL CORPORATION |
| FOR | THE REPAIR, REPLACEMENT, MAINTENANCE, AND OPERATION OF A WATER PIPELINE |
| AFFECTS | AS CONSTRUCTED WITHIN THE COMMON ELEMENTS |

| | |
|---|---|
| EASEMENT, INCLUDING TERMS AND PROVISIONS CONTAINED THEREIN | |
| RECORDED | MARCH 30, 1971 |
| RECORDING NO | 7103300464 |
| IN FAVOR OF | THE CITY OF REDMOND, A MUNICIPAL CORPORATION |
| FOR | THE REPAIR, REPLACEMENT, MAINTENANCE, AND OPERATION OF A SANITARY SEWER LINE |
| AFFECTS | AS CONSTRUCTED WITHIN THE COMMON ELEMENTS |

| | |
|---|---|
| PIPELINE AGREEMENT AND THE TERMS AND CONDITIONS THEREOF | |
| BETWEEN | CONNECTICUT GENERAL LIFE INSURANCE COMPANY, A CONNECTICUT CORPORATION |
| AND | OLYMPIC PIPE LINE COMPANY, A DELAWARE CORPORATION |
| RECORDED | FEBRUARY 6, 1974 |
| RECORDING NO | 7402060331 |

RIGHT TO MAKE NECESSARY SLOPES FOR CUTS OR FILLS UPON SAID PREMISES FOR STREET AS GRANTED BY DEED RECORDED MAY 29, 1975 AND JUNE 9, 1975 UNDER RECORDING NOS. 7505290588 AND 7506090475

## EXHIBIT "A" CONT.

*SUBJECT TO:*

AMENDMENT AND/OR MODIFICATION OF SAID COVENANTS
RECORDED                    AUGUST 30, 1978, DECEMBER 18, 1978, MAY 2, 1979,
                            SEPTEMBER 25, 1992 AND OCTOBER 3, 1994
RECORDING NO(S)             7808300899, 7812180927, 7812180928, 7905020138, 9209251810
                            AND 9410030948

MASTER ANTENNA TELEVISION SERVICE AGREEMENT AND THE TERMS AND
CONDITIONS THEREOF
BETWEEN                     DAON CORPORATION, ET AL
AND                         VISTA TELEVISION CABLE, INC., ET AL
RECORDED                    FEBRUARY 4, 1987 AND FEBRUARY 4, 1987
RECORDING NO                8702041039 AND 8702041040

ANY ASSESSMENT NOW OR HEREAFTER LEVIED UNDER THE PROVISIONS OF THE
CONDOMINIUM DECLARATION OF SIXTY-01 CONDOMINIUM, OR ANY AMENDMENT(S)
THERETO, OR UNDER THE BY-LAWS ADOPTED PURSUANT TO SAID DECLARATION

EASEMENT, INCLUDING TERMS AND PROVISIONS CONTAINED THEREIN
RECORDED                    NOVEMBER 6, 1987
RECORDING NO                8711060432
FOR                         SANITARY SEWER LINE
AFFECTS                     A PORTION OF THE COMMON ELEMENTS

TELEVISION DISTRIBUTION SYSTEM AGREEMENT AND THE TERMS AND CONDITIONS
THEREOF
BETWEEN                     SIXTY-01 ASSOCIATION OF APARTMENT OWNERS
AND                         VIACOM CABLEVISION
RECORDED                    NOVEMBER 7, 1990
RECORDING NO                9011090363

CONDITIONS, NOTES AND PROVISIONS CONTAINED AND/OR DELINEATED ON THE
FACE OF THE SURVEY RECORDED UNDER KING COUNTY RECORDING NO 9304279002

TERMS, PROVISIONS, COVENANTS, CONDITIONS, DEFINITIONS, OPTIONS,
OBLIGATIONS AND RESTRICTIONS CONTAINED IN CONDOMINIUM DECLARATION AND
AS MAY BE CONTAINED IN THE BY-LAWS ADOPTED PURSUANT TO SAID
DECLARATION
RECORDED                    AUGUST 30, 1978
RECORDING NO                7808300897

# EXHIBIT B

||||| |||| ||||| |||| ||||| ||||| |||| |||||

**20150420001026**
ROBINSON TAIT D
PAGE-001 OF 003        74.00
04/20/2015 14:20
KING COUNTY, WA

RETURN ADDRESS

Altisource
Attention: Asset Resolution
P.O. Box 105130
Atlanta, GA 30348

**E2725150**
04/20/2015 14:20
KING COUNTY, WA
TAX:              $10.00
SALE:              $0.00        PAGE-001 OF 001

**Document Title(s)**

Sheriff's Deed to Real Property

**Reference Number(s) of related documents:**

20060718000631

**Grantor(s)** (Last name, First name and Middle Initial)

John Urquhart, Sheriff of King County, State of Washington

**Grantee(s)** (Last name, First name and Middle Initial)

HSBC Bank USA, National Association, as Trustee of the Fieldstone Mortgage
Investment Trust, Series 2006-3

**Legal Description:** (abbreviated form: i.e. lot, block, plat or section township, range, quarter/quarter)

UNIT 101, BUILDING 11B, SIXTY-01 CONDO

Additional legal description is on page 3 of document

**Assessor's Property Tax Parcel/Account Number**

7804170050

The Auditor/Recorder will rely on the information provided on this form. The staff will not read the
document to verify the accuracy or completeness of the indexing information provided herein.

_____

Signature of Requesting Party



# SHERIFF
## KING COUNTY

IN THE SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE OF THE FIELDSTONE MORTGAGE INVESTMENT TRUST, SERIES 2006-3,

                                Plaintiff(s),

vs.

PENNY DENISE GOUDELOCK; CITIFINANCIAL, INC., SIXTY-01 ASSOCIATION OF APARTMENT OWNERS; ALSO ALL PERSONS OR PARTIES CLAIMING ANY RIGHT, TITLE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT HEREIN,

                                Defendant(s).

**Sheriff's Deed to Real Property**

**Cause No.: 14-2-09696-8 SEA**

Judgment Rendered On: August 22, 2014
Amended Order of Sale Issued: December 5, 2014
Date of Sale: February 26, 2015
Date of Deed: April 14, 2015

    I, Sheriff of King County, State of Washington, do hereby certify that under and by virtue of the procedure indicated above, issued out of the above entitled court, in the above entitled action, duly attested, and directed and delivered to me, by which I was commanded to levy upon and sell the right, title and interest of the Defendant in property hereinafter described according to law, and apply the proceeds of such sale to the satisfaction of the judgment in said action, with interest and costs of suit, I duly levied and sold at public auction, after due and legal notice to: HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE OF THE FIELDSTONE MORTGAGE INVESTMENT TRUST, SERIES 2006-3 who was the highest and best bidder therefore, at such sale, for the sum of: Two Hundred Thirty-Two Thousand and 00/100 ($232,000.00) Dollars, the real estate, situate in King County, State of Washington, bounded and described on the reverse side hereof, the description of which is incorporated by this reference. I thereupon delivered to said purchaser a certificate of sale as required by law, and the above entitled court in its order made and duly entered, has confirmed said sale.

    NOW, therefore, I, Sheriff of King County, or my authorized Deputy, by virtue of the procedure indicated above and pursuant to the statutes relevant to such procedure, do hereby grant, bargain, sell, convey and confirm: HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE OF THE FIELDSTONE MORTGAGE INVESTMENT TRUST, SERIES 2006-3, as the purchaser at said sale, or as his successor in interest, or as a redemptioner so hereto entitled, and to his heirs, successors and assigns forever the real estate, the description of which is incorporated above, as fully as I can, may or ought to by virtue of the procedure indicated above, the orders of said Court, and the statutes of this State.

    AS EVIDENCE of my so granting and conveying, I or my authorized Deputy hereby set my hand on the date indicated above, at Seattle, Washington.

                          King County Sheriff

                          By: _____
                                Hugo R. Esparza, Authorized Deputy

STATE OF WASHINGTON  }
                    } SS.
COUNTY OF KING        }

    On this day above written, before me personally appeared Hugo R. Esparza to me known to be the Sheriff of King County or his authorized deputy, who executed the within and foregoing instrument, and acknowledged said instrument to be the free and voluntary act and deed of said Sheriff of King County, for the uses and purposes therein mentioned, and on oath stated that he was authorized to execute said instrument.

                              Subscribed and sworn to before me April 14, 2015.
                              Notary Public in and for the State of
                              Washington residing at Seattle.

                              *Eva Marie Cunio*
                              Eva Marie Cunio

                              My commission expires ___9/23/16___

> Notary Public
> State of Washington
> EVA MARIE CUNIO
> MY COMMISSION EXPIRES
> September 23, 2016



SHERIFF'S DEED

SHERIFF OF KING COUNTY,
STATE OF WASHINGTON

TO:

HSBC BANK USA, NATIONAL
ASSOCIATION, AS TRUSTEE OF THE
FIELDSTONE MORTGAGE
INVESTMENT TRUST, SERIES 2006-3

Dated:

APRIL 14, 2015

LEGAL DESCRIPTION

UNIT 101, BUILDING 11B, SIXTY-01, A
CONDOMINIUM, ACCORDING TO THE
CONDOMINIUM DECLARATION RECORDED
UNDER RECORDING NUMBER(S) 7808300897
AND AMENDMENTS THERETO, AND IN
VOLUME 23 OF CONDOMINIUMS, PAGES 34
THROUGH 53 INCLUSIVE, IN KING COUNTY,
WASHINGTON.

TAX PARCEL NO. 7804170050.

# EXHIBIT C

7808300899

DECLARATION

AND

COVENANTS, CONDITIONS, RESTRICTIONS, AND RESERVATIONS

FOR

SIXTY-01

A Condominium

FILED FOR RECORD AT REQUEST OF
PIONEER NATL TITLE INS. CO.
719 SECOND AVENUE
SEATTLE, WA 98104

8/25/78
S:PRC

AUG 30  2 19 PM '78
RECORDED KC RECORDS

AUG-30-78 #002712 7808300899 ── E RF    72.00

Table of Contents

|  |  |  | Pages |
|---|---|---|---|
| ARTICLE | 1. | DEFINITIONS | 1 |
|  | Section 1.1 | Words Defined | 1 |
|  | Section 1.2 | Forms of Words | 3 |
|  | Section 1.3 | Statutory Definitions | 3 |
| ARTICLE | 2. | SUBMISSION OF THE PROPERTY TO THE CONDOMINIUM STATUTE | 3 |
| ARTICLE | 3. | DEVELOPMENT IN PHASES; DESCRIPTION OF LAND | 3 |
|  | Section 3.1 | Intention to Develop in Phases | 3 |
|  | Section 3.2 | Expansion into Subsequent Phases | 3 |
|  | Section 3.3 | Improvements in Subsequent Phases | 4 |
|  | Section 3.4 | Joint Use and Maintenance of Common Areas and Facilities | 5 |
|  | Section 3.5 | Election Not to Expand to One or More Subsequent Phases | 5 |
|  | Section 3.6 | Merger with Horizontal Property Regimes on Other Parcels | 5 |
| ARTICLE | 4. | DESCRIPTION OF BUILDINGS | 7 |
| ARTICLE | 5. | APARTMENT NUMBERS, LOCATION, AND DESCRIPTION | 7 |
| ARTICLE | 6. | COMMON AREAS AND FACILITIES | 7 |
|  | Section 6.1 | Description | 7 |
|  | Section 6.2 | Use | 8 |
| ARTICLE | 7. | LIMITED COMMON AREAS AND FACILITIES | 8 |
|  | Section 7.1 | Description | 8 |
|  | Section 7.2 | Appurtenant to Apartments | 9 |
| ARTICLE | 8. | ACCESS | 9 |
| ARTICLE | 9. | VALUE OF PROPERTY AND EACH APARTMENT AND PERCENTAGE OF UNDIVIDED INTEREST IN COMMON AREAS AND FACILITIES | 9 |

- i -

8/10/78
S:TRC

| | Section 9.1 | Schedule of Values and Percentages | 9 |
| | Section 9.2 | Effect of Subsequent Phases | 9 |
| ARTICLE 10. | PARKING | | 10 |
| | Section 10.1 | Assignment to Apartments | 10 |
| | Section 10.2 | Rental of Parking Space | 10 |
| | Section 10.3 | Use of Parking Spaces | 10 |
| ARTICLE 11. | PERMITTED USES; MAINTENANCE OF APARTMENTS; CONVEYANCES | | 10 |
| | Section 11.1 | Residential Use; Age Requirement | 10 |
| | Section 11.2 | Leases | 11 |
| | Section 11.3 | Maintenance of Apartments and Limited Common Areas | 11 |
| | Section 11.4 | Exterior Appearance | 11 |
| | Section 11.5 | Effect on Insurance | 12 |
| | Section 11.6 | Alteration of Common Area | 12 |
| | Section 11.7 | Signs | 12 |
| | Section 11.8 | Pets | 12 |
| | Section 11.9 | Offensive Activity | 12 |
| | Section 11.10 | Conveyances; Notice Required | 12 |
| ARTICLE 12. | ENTRY FOR REPAIRS | | 13 |
| ARTICLE 13. | SERVICE OF PROCESS | | 13 |
| ARTICLE 14. | ASSOCIATION OF APARTMENT OWNERS | | 13 |
| | Section 14.1 | Form of Association | 13 |
| | Section 14.2 | Articles and Bylaws | 13 |
| | Section 14.3 | Qualification for Membership | 14 |
| | Section 14.4 | Transfer of Membership | 14 |
| | Section 14.5 | Number of Votes | 14 |
| | Section 14.6 | Voting Representative | 14 |

- ii -

8/10/78
S:TRC

| | | |
|---|---|---|
| Section 14.7 | Joint Owner Disputes | 15 |
| Section 14.8 | Vote Pledged to Mortgagee | 15 |
| Section 14.9 | Annual and Special Meetings | 15 |
| Section 14.10 | Audits | 15 |
| Section 14.11 | Books and Records | 15 |
| Section 14.12 | Inspection of Condominium Documents, Books, and Records | 15 |
| ARTICLE 15. | NOTICES | 16 |
| Section 15.1 | Form and Delivery of Notice | 16 |
| Section 15.2 | Notices to Mortgagees | 16 |
| ARTICLE 16. | ADMINISTRATION OF PROPERTY; RIGHTS RETAINED BY DECLARANT | 17 |
| Section 16.1 | Transition Date | 17 |
| Section 16.2 | Declarant's Powers Until Transition Date | 17 |
| Section 16.3 | Transfer of Administration | 17 |
| ARTICLE 17. | AUTHORITY OF THE BOARD | 18 |
| Section 17.1 | Adoption of Rules and Regulations | 18 |
| Section 17.2 | Enforcement of Declaration, Etc. | 18 |
| Section 17.3 | Goods and Services | 18 |
| Section 17.4 | Managing Agent | 18 |
| Section 17.5 | Protection of Property | 19 |
| Section 17.6 | Delegation to Umbrella Association | 19 |
| ARTICLE 18. | BUDGET AND ASSESSMENT FOR COMMON EXPENSES | 19 |
| Section 18.1 | Fiscal Year | 19 |
| Section 18.2 | Preparation of Budget | 19 |
| Section 18.3 | Monthly Assessments for Common Expenses | 19 |

-- iii --

8/10/78
S:TRC

| | | |
|---|---|---|
| Section 18.4 | Special Assessments | 20 |
| Section 18.5 | Notice of Assessment | 20 |
| Section 18.6 | Payment of Monthly Assessments | 20 |
| Section 18.7 | Proceeds Belong to Association | 20 |
| Section 18.8 | Limitation on Assessments | 20 |
| Section 18.9 | Failure to Assess | 21 |
| Section 18.10 | Certificate of Unpaid Assessments | 21 |
| ARTICLE 19. | LIEN AND COLLECTION OF ASSESSMENTS | 21 |
| Section 19.1 | Assessments Are a Lien; Priority | 21 |
| Section 19.2 | Lien May Be Foreclosed | 22 |
| Section 19.3 | Assessments Are Personal Obligations | 22 |
| Section 19.4 | Late Charges and Interest on Delinquent Assessments | 22 |
| Section 19.5 | Recovery of Attorneys' Fees and Costs | 22 |
| Section 19.6 | Termination of Utility Service | 22 |
| Section 19.7 | Remedies Cumulative | 22 |
| Section 19.8 | Security Deposit | 22 |
| ARTICLE 20. | FAILURE OF BOARD TO INSIST ON STRICT PERFORMANCE NO WAIVER | 23 |
| ARTICLE 21. | LIMITATION OF LIABILITY | 23 |
| Section 21.1 | Liability for Utility Failure, etc. | 23 |
| Section 21.2 | No Personal Liability | 23 |
| ARTICLE 22. | INDEMNIFICATION | 24 |
| ARTICLE 23. | INSURANCE | 24 |
| Section 23.1 | General Requirements | 24 |

- iv -

8/10/78
S:TRC

|  | Section 23.2 | Casualty Insurance | 25 |
|---|---|---|---|
|  | Section 23.3 | Comprehensive Public Liability Insurance | 25 |
|  | Section 23.4 | Additional Policy Provisions | 26 |
|  | Section 23.5 | Fidelity Bonds | 27 |
|  | Section 23.6 | Owners' Individual Insurance | 27 |
| ARTICLE 24. | DAMAGE AND REPAIR OF DAMAGE TO PROPERTY |  | 27 |
|  | Section 24.1 | Initial Board Determination | 27 |
|  | Section 24.2 | Notice of Damage | 28 |
|  | Section 24.3 | Definitions: Damage, Substantial Damage, Repair, Emergency Work | 28 |
|  | Section 24.4 | Execution of Repairs | 28 |
|  | Section 24.5 | Damage Not Substantial | 29 |
|  | Section 24.6 | Substantial Damage | 29 |
|  | Section 24.7 | Effect of Decision Not to Repair | 30 |
| ARTICLE 25. | CONDEMNATION |  | 30 |
|  | Section 25.1 | Consequences of Condemnation; Notices | 30 |
|  | Section 25.2 | Proceeds | 31 |
|  | Section 25.3 | Complete Taking | 31 |
|  | Section 25.4 | Partial Taking; Distribution of Proceeds | 31 |
|  | Section 25.5 | Partial Taking: Reconstruction and Repair | 32 |
|  | Section 25.6 | Partial Taking: Taking of One or More Apartments; Continued Condominium Status of Remainder | 32 |
| ARTICLE 26. | EASEMENTS AND RECIPROCAL RIGHTS; INTEGRATION OF PARCELS THROUGH UMBRELLA ASSOCIATION |  | 32 |
|  | Section 26.1 | In General | 32 |

-- v --

8/10/78
S:TKC

| | | |
|---|---|---|
| Section 26.2 | Encroachments | 33 |
| Section 26.3 | Easement and Rights Reserved by Declarant | 33 |
| Section 26.4 | Role of Umbrella Association | 34 |
| Section 26.5 | Assignment to Umbrella Association | 34 |
| Section 26.6 | Submission to Umbrella Association | 34 |
| Section 26.7 | Dissolution of Umbrella Association | 34 |
| ARTICLE 27. | PROCEDURES FOR SUBDIVIDING OR COMBINING APARTMENTS | 35 |
| Section 27.1 | Submission of Proposal | 35 |
| Section 27.2 | Approval Required for Subdivision | 35 |
| Section 27.3 | Approval Required for Combination | 35 |
| Section 27.4 | Procedure After Approval | 35 |
| ARTICLE 28. | AMENDMENTS OF DECLARATION, SURVEY MAP, AND PLANS | 35 |
| Section 28.1 | Amendments by the Association | 35 |
| Section 28.2 | Requirement of Mortgagee Approval | 36 |
| ARTICLE 29. | ABANDONMENT OR TERMINATION OF CONDOMINIUM STATUS | 36 |
| ARTICLE 30. | SEVERABILITY | 37 |
| ARTICLE 31. | EFFECTIVE DATE | 37 |
| ARTICLE 32. | INCORPORATION OF SCHEDULES BY REFERENCE: RECORDING OF SURVEY MAP AND PLANS | 37 |
| ARTICLE 33. | ASSIGNMENT BY DECLARANT | 37 |
| SCHEDULE A. | Description of Land | |
| SCHEDULE B. | Street Addresses and Descriptions of Buildings | |
| SCHEDULE C. | Descriptions of Apartments | |
| SCHEDULE D | Apartment Values and Percentages Undivided Interest | |
| SCHEDULE E | Areas and Facilities under Control of the Sixty-01 Umbrella Association | |

786830899

- vi -

8/10/78
S:TRC

ARTICLE 1.   DEFINITIONS.

Section 1.1    Words Defined.  For the purposes of this Declaration and any amendments hereto, the following definitions shall apply.

1.1.1   Apartment shall mean a residential unit composed of a suite of rooms and other enclosed spaces in a building.  The boundaries of an apartment are the unfinished interior surfaces of its perimeter walls, floors, ceilings, windows, and doors, and the apartment includes both the portions of the building so described and the air space so encompassed.

1.1.2   Articles shall mean the articles of incorporation of the Association defined below.

1.1.3   Association shall mean the Association of Apartment Owners described in Article 14 of this Declaration.

1.1.4   Board shall mean the board of directors of the Association.

1.1.5   Bylaws shall mean the bylaws of the Association.

1.1.6   Common Area and Common Areas and Facilities shall mean the common areas and facilities described in Article 6 and in Article 7.

1.1.7   Condominium shall mean the horizontal property regime created by this Declaration.

1.1.8   Condominium Statute shall mean the Horizontal Property Regimes Act of the state of Washington, Laws of 1963, Chapter 156, presently codified in Chapter 64.32, Revised Code of Washington, and amendments thereto.

1.1.9   Declarant shall mean Sixty-01 Associates, a partnership, and its representatives, successors, and assigns.

1.1.10   Declaration shall mean this Declaration and Covenants, Conditions, Restrictions, and Reservations for Sixty-01, as it may from time to time be amended.

1.1.11   First Mortgage and First Mortgagee shall mean, respectively, (a) a recorded mortgage on an apartment that has legal priority over all other mortgages thereon, and (b) the holder of a first mortgage.

1.1.12   Institutional Holder of a mortgage shall mean a mortgagee that is a bank, savings and loan association, established mortgage company, or other entity chartered under federal or state

- 1 -

8/10/78
S:TRC

laws, any corporation in the business of owning or servicing real estate mortgages, or insurance company, or any federal or state agency.

1.1.13 _Managing Agent_ shall mean the person designated by Declarant under Section 16.2 or by the Board under Section 17.4 or by the Umbrella Association.

1.1.14 _Mortgage_ shall mean a recorded mortgage or deed of trust that creates a lien against an apartment and shall also mean a real estate contract for the sale of an apartment.

1.1.15 _Mortgagee_ shall mean the beneficial owner, or the designee of the beneficial owner, of an encumbrance on an apartment created by a mortgage or deed of trust and shall also mean the vendor, or the designee of a vendor, of a real estate contract for the sale of an apartment.

1.1.16 _Other Parcels_ shall mean the Parcels of land described in Schedule A that have not been included within the condominium, either by this Declaration or a recorded Subsequent Phase Certificate at the time for which the phase is being interpreted.

1.1.17 _Owner_ shall mean the legal owner of an apartment.

1.1.18 _Parcel_ shall mean the several parcels of land described in Schedule A as Parcel A, Parcel B, etc.

1.1.19 _Person_ shall mean an individual, corporation, partnership, association, trustee, or other legal entity.

1.1.20 _Property_ shall mean the land and the buildings and all improvements and structures now or hereafter placed on the land described in Schedule A as Parcel A. When (and if) Declarant records one or more Subsequent Phase Certificates, the word "property" shall from the time of such recording mean Parcel A plus the Parcel or Parcels added to the condominium by the Subsequent Phase Certificate or Certificates and the buildings and all improvements and structures now or hereafter placed on those Parcels.

1.1.21 _Subsequent Phase_ and _Subsequent Phase Certificate_ shall have the meanings ascribed to them in Article 3.

1.1.22 _Survey Map and Plans_ shall mean the survey map and the plans recorded simultaneously with this Declaration and any amendments, corrections, and addenda thereto subsequently recorded.

1.1.23 _Transition Date_ is defined in Article 16.1.

1.1.24 _Umbrella Association_ shall mean the Sixty-01 Umbrella Association, a nonprofit corporation.

- 2 -

6/22/78
S:TRC

7858330899

1.1.25  Umbrella Declaration shall mean the Sixty-01
Umbrella Declaration of Covenants, Conditions, Restrictions, and
Easements recorded concurrently with this Declaration.

Section 1.2    Form of Words.  The singular form of words shall
include the plural and the plural shall include the singular.  Mascu-
line, feminine, and neuter pronouns shall be used interchangeably.

Section 1.3    Statutory Definitions.  Some of the terms defined
above are also defined in the Condominium Statute.  The definitions
in this Declaration are not intended to limit or contradict the defi-
nitions in the Condominium Statute.  If there is any inconsistency or
conflict, the definition in the Condominium Statute will prevail.

ARTICLE 2.    SUBMISSION OF THE PROPERTY TO THE CONDOMINIUM STATUTE.

Declarant, being the sole owner of the property, makes
this Declaration for the purpose of submitting the property to the
condominium form of use and ownership and to the provisions of the
Condominium Statute.  Declarant declares that the property shall be
held, used, conveyed, encumbered, leased, occupied, rented, and
improved subject to the covenants, conditions, restrictions, reser-
vations, and easements stated in this Declaration, all of which are
in furtherance of the division of the property into condominium
apartments and common areas and facilities and shall be deemed to
run with the land and be a burden and benefit to Declarant and all
persons who own or acquire an interest in the property or any part
thereof, and their grantees, successors, heirs, executors, admin-
istrators, and assigns.

ARTICLE 3.    DEVELOPMENT IN PHASES; DESCRIPTION OF LAND.

Section 3.1    Intention to Develop in Phases.  Declarant pro-
poses to develop the condominium in phases on the several Parcels of
land described in Schedule A.  The First Phase, consisting of Parcel
A only, is the initial phase of the condominium.  This Declaration
shall be effective immediately to establish the First Phase as a
condominium.

Section 3.2    Expansion into Subsequent Phases.  Declarant
expects to expand the condominium into one or more Subsequent Phases
by adding other Parcels, but is not required to expand the condominium
at all.  Declarant may add other Parcels one at a time or in combina-
tions and in any sequence.  If Declarant elects to expand the condomin-
ium into a Subsequent Phase or Subsequent Phases, it may do so by
recording Survey Maps and Plans of the improvements and apartments
added to the condominium by the Subsequent Phase or Phases and a

-- 3 --

8/10/78
S:TRC

Subsequent Phase Certificate that specifies the Parcel or Parcels then being added to the condominium and that declares that the Survey Maps and Plans previously recorded or recorded therewith accurately depict, as built, all of the improvements and apartments included in the Subsequent Phase. Upon the recording of a Subsequent Phase Certificate, this condominium (i.e., the First Phase or such Subsequent Phase or Phases as it may have been expanded into) shall be merged into and become a part of the next Subsequent Phase as a single, unified condominium, this Declaration and the Articles and Bylaws of the Association of this condominium shall immediately become applicable to the Parcels added by the Subsequent Phase, and any condominium declaration, articles, bylaws, and other condominium documents theretofore affecting the Parcel or Parcels so added shall automatically be superseded and extinguished. The Subsequent Phase Certificate shall contain a schedule of the value and the percentage of undivided interest in the common areas and facilities appertaining to each apartment added to the condominium by the Subsequent Phase.

Section 3.3    Improvements in Subsequent Phases.

3.3.1    Number of Apartments.  The number of apartments on the Parcel that constitutes the First Phase and, if the condominium is expanded into one or more Subsequent Phases, the maximum number of apartments that will be on the Other Parcels that may hereafter become a part of the condominium are:

| Parcel A | 124 apartments | Parcel E | 92 apartments |
| Parcel B | 96 apartments | Parcel F | 105 apartments |
| Parcel C | 122 apartments | Parcel G | 64 apartments |
| Parcel D | 102 apartments | Parcel H | 65 apartments |

The maximum numbers of apartments stated above will be applicable only to the other Parcels that are hereafter added to the condominium.

3.3.2    Character of Improvements.  All of the land described in Schedule A is now a developed and existing rental apartment complex.  The improvements added to the condominium by Subsequent Phases are therefore now substantially in existence and in matters of style, quality, size, and cost are and will continue to be comparable to and compatible with the improvements in the First Phase.  Declarant reserves the right to remodel, refurbish, and made minor additions to the improvements on the Other Parcels and in doing so it make reasonable alterations in them to be responsive to market demand, but Declarant's latitude in making such alterations shall be restricted in that all improvements added to the condominium in a Subsequent Phase shall continue to be comparable to and compatible with the improvements that are then in the condominium.  The power to determine whether Declarant's alteration or construction of improvements in a Subsequent Phase meets the requirements of this section will be referred to Declarant's architect and one other architect to be designated by Declarant who shall have no association with this condominium project except to

- 4 -

8/10/78
S:TRC

this section Declarant's alteration or construction of improvements in the Subsequent Phase or the plans for such alterations or construction if they have not been made or completed. If the two architects agree that the alterations or construction planned for or made in the improvements in the Subsequent Phase comply with the requirements of this section, such determination shall be conclusive and binding upon all persons who have or acquire any interest in the condominium. Any claim that Declarant's alterations or construction of improvements does not comply with this section must be made within two months after the claimant has notice of the alleged noncompliance and in any event not later than 60 days after the filing of the Subsequent Phase Certificate adding those improvements to the condominium.

Section 3.4    Joint Use and Maintenance of Common Areas and Facilities.  When (and if) the condominium is expanded from the First Phase into a Subsequent Phase or Phases, all of the common areas and facilities of the First Phase and all of the common areas and facilities of the Subsequent Phase or Phases will be for the use and enjoyment of the entire condominium and all of the apartment owners in the condominium shall share in the subsequent expenses of maintaining, repairing, and replacing them as may be necessary.

Section 3.5    Election Not to Expand to One or More Subsequent Phases.  If Declarant does not add all of the other Parcels to the condominium, the First Phase or such Subsequent Phase as the condominium shall have been expanded into shall constitute a complete, fully operational condominium, and the Parcel or Parcels of land not encompassed by the condominium may be used for any lawful purpose that is allowed by the zoning and other applicable land use laws and regulations.  Declarant shall no longer have the power to expand the condominium into a Subsequent Phase after seven years have elapsed from the date of the first recording of a deed to an apartment purchaser (but not of a deed of the entire property).  If Declarant determines that it will not expand the condominium into a Subsequent Phase or further Subsequent Phases, it may record a certificate signed only by Declarant describing the land that will not be added to the condominium.

Section 3.6    Merger with Horizontal Property Regimes on Other Parcels

3.6.1    Declarant reserves the power to merge this condominium (either in its First Phase or such Subsequent Phase as it may be expanded into) with one or more other horizontal property regimes established on the other Parcels described in Schedule A, thereby creating a single, unified condominium upon all of the Parcels affected by the merger.  Declarant may exercise this merger power more than one time if there remain other Parcels described in Schedule A on which horizontal property regimes are established that have not been merged with this condominium.

-- 5 --

8/10/78
S:TRC

3.6.2   Declarant may exercise the power of merger de-
scribed in subsection 3.6.1 by recording in the public records a Merger
Certificate that specifies (a) the horizontal property regimes that are
thereby merged, and (b) which one of the merged horizontal property
regimes shall be deemed to be the "Surviving Regime".

3.6.3   In the event of a merger under this section 3.6,
the condominium declaration of the Surviving Regime and articles of
incorporation and bylaws of its Association of Apartment Owners, and
the provisions for joint use and maintenance of common areas and facil-
ities, shall become applicable to the entire merged horizontal property
regime in the same manner and with the same effect as if the Surviving
Regime had been expanded to add the other regime or regimes as subse-
quent phases of the Surviving Regime pursuant to its declaration.

3.6.4   If the condominium is merged into another con-
dominium under this Section 3.6 and the other condominium is the
Surviving Regime, this Declaration and the Articles and Bylaws of the
Association of this condominium shall automatically be extinguished
when the declaration, articles, and bylaws of the Surviving Regime
become applicable to the property theretofore governed by this Declara-
tion.   If this condominium is the Surviving Regime, the declaration,
articles and bylaws of the other condominiums shall automatically be
extinguished.

3.6.5   Declarant's power to include this condominium in
a merger with another regime, either as the surviving or non-surviving
regime,  shall be limited by the following requirements:

(a)   The character of the improvements on the
Parcels merged with this condominium shall be subject to the provisions
of section 3.3 hereof to the same extent as if the Parcels were being
added by expansion of this condominium to a Subsequent Phase.

(b)   If this condominium is merged into another
regime that is specified as being the surviving regime, the declaration,
articles, and bylaws (the "documentation") of the Surviving Regime
shall not differ from the documentation of this condominium in such a
way that the adoption of the Surviving Regime's documentation consti-
tutes a material amendment of this condominium's documentation.   (This
requirement may be waived by obtaining the approval of the merger by
the number of apartment owners and mortgagees that would have been
required to approve the changes as an amendment.)

(c)   The Merger Certificate shall contain a
schedule of the percentage of undivided interest in the common areas
and facilities appertaining to each apartment in the Surviving Regime
after the merger.

– 6 –

8/10/78
S:TRC

ARTICLE 4.   DESCRIPTION OF BUILDINGS.

        The buildings in the condominium are principally of wood
frame construction on concrete foundations.  The buildings have been
given numerical designations.  The building number, building style,
street address, number of stories (there are no basements), and the
number of apartments in each building are shown in Schedule B.  Declar-
ant may supplement Schedule B to describe the buildings included in
Subsequent Phases.  The buildings are further described and their
locations are shown in the Survey Map and Plans.

ARTICLE 5.   APARTMENT NUMBERS, LOCATION, AND DESCRIPTION.

        Each apartment is identified by an assigned number.
Schedule C shows, for each apartment in the First Phase, the building
and floor level where it is located, the apartment type, number of
rooms, approximate floor area, and other relevant information.  Declar-
ant may supplement Schedule C to describe the apartments included in
Subsequent Phases.  The location and configuration of each apartment
are shown in the Survey Map and Plans.

ARTICLE 6.   COMMON AREAS AND FACILITIES.

        Section 6.1     Description.  The common areas and facilities
consist of those specified in the Condominium Statute, as well as
the following:

        6.1.1   The land described in Schedule A as Parcel A and
when (and if) the condominium is expanded into Subsequent Phases, the
Parcels added to the condominium by those Subsequent Phases.

        6.1.2   The roofs, foundations, studding, joists, beams,
supports, main walls (excluding non-bearing interior partitions of
apartments, if any), and all other structural parts of the buildings,
to the unfinished interior surfaces of the apartments' perimeter
walls, floors, ceilings, windows, and doors.

        6.1.3   The pipes, wires, conduits, and other fixtures
and equipment for utilities; the chimneys and fireplace flues.

        6.1.4   The grounds, trees, gardens, landscaped areas,
outdoor irrigation systems, exterior fixtures, pathways, roadways, and
driveways.

        6.1.5   The parking spaces not made limited common areas
appurtenant to apartments pursuant to Article 10.

        6.1.6   Attics and crawl spaces in the buildings.

                          -- 7 --

8/10/78
S:TRC

Case 15-01093-TWD   Doc 11-1   Filed 07/21/15   Ent. 07/21/15 14:39:54   Pg. 26 of 80

6.1.7   The recreational and maintenance facilities of the condominium that are specified in Schedule E as being located on Parcel A and, when (and if) the condominium is expanded into Subsequent Phases, such facilities that are specified in Schedule E as being located on Parcels that are added to the condominium by those Subsequent Phases.

6.1.8   The lobbies, entrance ways, stairs and stairways, hallways, corridors, utility rooms, laundry facilities, workshops, and other areas in apartment buildings but are not within an apartment.

6.1.9   Certain items which might ordinarily be considered common areas such as, but not limited to, air conditioning units, screen doors, window screens, awnings, planter boxes, and the like, may pursuant to specification in the Bylaws or administrative rules and regulations, be designated as items to be furnished and maintained by apartment owners at their individual expense, in good order, according to standards and requirements set forth in the Bylaws or by rule adopted by the Board.

6.1.10   The limited common areas and facilities described in Article 7.

Section 6.2   Use.   Each apartment owner and the owner's family members and tenants, and agents, servants, invitees, and licensees shall have the right to use the common areas and facilities (except the limited common areas and facilities reserved for other apartments) in common with all other persons having such right.   In addition, such persons shall have the right to use the areas and facilities on the other Parcels that are described in Schedule E, in common with all other persons having such right, as provided in the Sixty-01 Umbrella Declaration.   The right to use the common areas and facilities, including the limited common areas and facilities and the areas and facilities on the other Parcels, shall be governed by the provisions of the Condominium Statute, this Declaration, the Bylaws, and the rules and regulations of the Association, and, where applicable, the Umbrella Association and the Umbrella Declaration.   The owners shall not by act or omission seek to abandon, partition, subdivide, encumber, sell, or transfer the common areas and facilities and no other person shall have the right to have them partitioned or divided.   The granting of easements for public utilities or for other public purposes consistent with the intended use of the common areas and facilities by the apartment owners and occupants shall not be deemed a partition or division. A subdivision of a limited common area as an incident of an authorized subdivision of an apartment pursuant to Article 27 will not be deemed a violation of this provision.

ARTICLE 7.   LIMITED COMMON AREAS AND FACILITIES.

Section 7.1   Description.   Some common areas and facilities, called limited common areas and facilities, are reserved for the

8/10/78
S:TRC

exclusive use of the apartment or apartments to which they are adjacent or assigned. They consist of the following:

7.1.1 The patio or lanai adjacent to the apartment and accessible from the apartment. The location of the patio or lanai is shown on the Survey Map and Plans. The approximate area is shown in Schedule C.

7.1.2 The covered parking space that is assigned to the apartment pursuant to Article 10.

7.1.3 The storage locker that has been built into the covered parking space assigned to the apartment or, in the case of the "E" or "E-1" style buildings, the locker with the same number as the apartment number, located in the storage room in the basement of the building.

Section 7.2    Appurtenant to Apartments. Conveyance of an apartment includes the exclusive rights to the use of the limited common areas and facilities appurtenant to that apartment.

ARTICLE 8.    ACCESS.

Each apartment has direct access to the common area adjacent to the apartment entrance, thence to the common walkways, parking areas, and driveways of the condominium, and thence to the public streets either directly or by way of easements created by the Umbrella Declaration. The right of ingress to and egress from each apartment shall be perpetual and appurtenant to the apartment.

ARTICLE 9.    VALUE OF PROPERTY AND EACH APARTMENT AND PERCENTAGE OF UNDIVIDED INTEREST IN COMMON AREAS AND FACILITIES.

Section 9.1    Schedule of Values and Percentages. For the purpose of meeting certain requirements of the Condominium Statute, the value of the property, the value of each apartment, and the percentage of undivided interest in the common areas and facilities appertaining to each apartment and its owner for all purposes, including voting, are set forth in Schedule D for the First Phase. The values do not necessarily reflect the amount for which an apartment will be sold by Declarant, or others, and will not be altered by variations in selling prices.

Section 9.2    Effect of Subsequent Phases. The percentages for the apartments in the First Phase are calculated with relation to the total value of the property in the First Phase. When (and if) the condominium is expanded into one or more Subsequent Phases or merged with other horizontal property regimes the total values assigned in Schedule D to the Parcels then constituting the condominium will be

— 9 —

8/10/78
S:TRC

added together and the percentages of undivided interest of the apart-
ments in the condominium will be re-calculated to reflect the percentage
of the assigned value of the apartment in relation to the then total
value of the condominium.

ARTICLE 10.  PARKING

Section 10.1     Assignment to Apartments.  Each "Townhouse" apart-
ment is assigned as an appurtenant limited common area the attached
carport in front of the apartment.  Parking for all other apartments
is provided in the detached parking structures, and each of those
apartments is assigned the one parking space (or, in the case of the 3-
bedroom apartments, the two parking spaces) that bears the same number
as the apartment.  The structures in which the assigned parking spaces
are located are shown on the survey map.

Section 10.2     Rental of Parking Space.  Passenger automobile
parking spaces that have not been assigned to an apartment and recre-
ational vehicle parking spaces may either be held for common parking
or rented by the Association to an owner in accordance with such rules
or regulations as the Board may from time to time adopt.  A maximum of
50% of the unassigned passenger automobile parking spaces may be so
rented at any one time.  The owner of an apartment may rent an appur-
tenant parking space to the occupant of another apartment in the
condominium, but such rental shall be subject to termination upon 15
days' notice.  Any rental of a parking space by the Association shall
likewise be terminable upon 15 days' notice.  Rental of a parking space
shall be terminated automatically and without notice upon the sale of
the apartment to which it is appurtenant.

Section 10.3     Use of Parking Spaces.  Parking spaces may be used
only for the parking of operable passenger motor vehicles except in
areas specifically designated by the Board for recreational vehicles.
Use of any parking spaces for parking trucks, trailers, or recreational
vehicles, or for other purposes shall be permitted only to the extent
expressly allowed by rules and regulations adopted by the Board.  The
Board may prohibit or restrict the parking of automobiles owned by
apartment residents in the parking spaces held for common parking.  The
Board may direct that any vehicle or other thing improperly parked or
kept in a parking space be removed, and if it is not removed within 10
days the Board may cause it to be removed at the risk and cost of the
owner.

ARTICLE 11.  PERMITTED USES; MAINTENANCE OF APARTMENTS; CONVEYANCES.

Section 11.1     Residential Use; Age Requirement.  The apartments
are intended for and restricted to use as single family residences
only, on an ownership, rental, or lease basis, and the other parts of
the condominium are intended for and restricted to use for social,
recreational, or other reasonable activities normally incident to

- 10 -

8/25/78
S:TPC

residential condominiums, and for the purposes of operating the Association and managing the condominium if required. Notwithstanding the foregoing, Declarant shall have the rights reserved in Section 25.3. Residents of apartments must be 16 years of age or older, or less than two years of age. The Board may from time to time upon a showing of extreme personal need allow temporary visits of persons between ages two and 16 with permanent residents, but not for more than three months in any year for any apartment.

Section 11.2   Leases.  No apartment owner or other person shall be permitted to lease or otherwise rent an apartment for a term less than 30 days.  No lease or rental of an apartment may be of less than the entire apartment.  Any lease or rental agreement must provide that its terms shall be subject in all respects to the provisions of this Declaration and the Bylaws and rules and regulations of the Association and that any failure by the tenant to comply with the terms of such documents, rules, and regulations shall be a default under the lease or rental agreement and that the apartment owner grants to the Board and managing agent the authority to evict the tenant on the apartment owner's behalf for such default, upon only such notice as is required by law; if any lease does not contain the foregoing provisions, such provisions shall nevertheless be deemed to be a part of the lease and binding upon the apartment owner and the tenant by reason of their being stated in this Declaration.  Neither the Board nor the managing agent shall be liable to the apartment owner or the tenant for any eviction under this section that is made in good faith.  All leases and rental agreements shall be in writing.  Copies of all leases and rental agreements shall be delivered to the Association before the tenancy commences. Other than as stated in this Section 11.2, there is no restriction on the right of any apartment owner to lease or otherwise rent his apartment.

Section 11.3   Maintenance of Apartments and Limited Common Areas.  Each apartment owner shall, at the owner's sole expense, keep the interior of the apartment and its equipment, appliances, and appurtenances in a clean and sanitary condition, free of rodents and pests, and in good order, condition, and repair and shall do all redecorating and painting at any time necessary to maintain the good appearance and condition of his apartment.  Each owner shall be responsible for the maintenance, repair, or replacement of any plumbing fixtures, water heaters, fans, heating equipment, electrical fixtures, or appliances which are in the apartment or portions thereof that serve that apartment only, and shall replace any glass in the windows and in the exterior doors of the apartment that becomes cracked or broken.  Each apartment owner will be responsible for care, maintenance, cleanliness, and orderliness of the limited common areas that are appurtenant to the apartment, except that the Association may assume responsibility for the sweeping and maintenance of the parking facilities and allocate the cost to the apartments on an equitable basis.  The Association may assume responsibility from time to time for the maintenance of some or all of the exterior lighting fixtures even though they may be controlled from an apartment.  Owners may not, however, modify, paint, or otherwise decorate, or in any way alter their respective limited common areas without prior written approval of the Board.

8/10/78
S:TRC

- 11 -

Section 11.4    Exterior Appearance.  In order to preserve a uniform exterior appearance of the buildings, the Board shall provide for the painting or staining of the buildings and prescribe the type and color of paint or stain.  No owner may modify or decorate the exterior of the buildings, or screens, doors, awnings, or other portions of any apartment visible from outside the apartment without the prior written consent of the Board or in accordance with rules or regulations of the Board.  No exterior radio or television antennae may be installed without the prior written consent of the Board.  The Board may also require use of a uniform color and fabric for draperies, under-draperies, or drapery lining for all apartments.

Section 11.5    Effect on Insurance.  Nothing shall be done or kept in any apartment or in any common area which will increase the rate of insurance on the property without the prior written consent of the Board.  Nothing shall be done or kept in any apartment or in any common area which will result in the cancellation of insurance on any part of the property, or which would be in violation of any laws.

Section 11.6    Alteration of Common Area.  Nothing shall be altered or constructed in or removed from any common area or facility except upon the prior written consent of the Board.

Section 11.7    Signs.  No sign of any kind shall be displayed to the public view on or from any apartment or common area or limited common area without the prior consent of the Board; provided, that the Board shall designate an area or areas for display of "For Sale" signs.  This section shall not apply to Declarant.

Section 11.8    Pets.  No dogs will be allowed in the condominium, either inside or outside.  No other animals, birds, reptiles, or living creatures of any kind (herein referred to as "pets"), shall be kept in any apartment or in the common or limited common areas except subject to rules and regulations adopted by the Board, or Bylaws adopted by the Association.  The Board may at any time require the removal of any pet which it finds is disturbing other owners unreasonably, and may exercise this authority for specific animals even though other pets are permitted to remain.

Section 11.9    Offensive Activity.  No noxious or offensive activity shall be carried on in any apartment or common area, nor shall anything be done therein which may be or become an annoyance or nuisance to other owners.

Section 11.10    Conveyances; Notice Required.  The right of an apartment owner to sell, transfer, or otherwise convey the apartment shall not be subject to any right of approval, disapproval, first refusal, or similar restriction by the Association or the Board, or anyone acting on their behalf.  An owner intending to sell an apartment shall deliver a written notice to the Board, at least two weeks before closing, specifying the apartment being sold; the name and address of the purchaser, of the closing agent, and of the title insurance company insuring the purchaser's interest; and the estimated closing date.  The Board shall have the right to notify the purchaser, the title insurance

8/10/78                              - 12 -
S:TRC

company, and the closing agent of the amount of unpaid assessments and charges outstanding against the apartment, whether or not such information is requested.

ARTICLE 12.  ENTRY FOR REPAIRS.

The Association and its agents or employees may enter any apartment and limited common areas appurtenant thereto to effect repairs, improvements, replacements, or maintenance deemed by the Board to be necessary in the performance of its duties, to do necessary work that the apartment owner has failed to perform, or to prevent damage to the common areas and facilities or to another apartment. Except in cases of great emergency that preclude advance notice, the Board shall cause the apartment occupant to be given notice and an explanation of the need for entry as far in advance of entry as is reasonably practicable. Such entry shall be made with as little inconvenience to the owners and occupants as practicable. Any damage caused by such entry shall be repaired by the Association as a common expense unless the repairs or maintenance were necessitated by the acts or default of the owner or occupant of the apartment entered, in which event the costs of the repairs or maintenance shall be specially assessed to that apartment.

ARTICLE 13.  SERVICE OF PROCESS.

Jerome Cohen, whose address is 1617 South Jackson Street, Seattle, Washington 98144, is the person upon whom process may be served as provided for in the Condominium Statute. After organization of the Association, service of process for the purposes provided in the Condominium Statute shall be made upon the registered agent of the Association. The Board may at any time designate a different person for such purpose by filing an amendment to this Declaration limited to the sole purpose of making such change, and such amendment need be signed and acknowledged only by the president of the Association.

ARTICLE 14.  ASSOCIATION OF APARTMENT OWNERS.

Section 14.1   Form of Association.  The owners of apartments shall constitute an Association of Apartment Owners as defined in the Condominium Statute.  The Association will be a nonprofit corporation formed under the laws of the state of Washington.  The rights and duties of the members and of the corporation shall be governed by the provisions of the Condominium Statute, this Declaration, and the Articles of Incorporation of the Association.

Section 14.2   Articles and Bylaws.  Before the Transition Date Articles of Incorporation and Bylaws will be adopted to supplement this Declaration and to provide for the administration of the Association

-- 13 --

8/10/78
S:TRC

and the property and for other purposes not inconsistent with the Condominium Statute or this Declaration. Declarant may amend the Bylaws from time to time until the Transition Date. After the Transition Date the Bylaws may be amended by the affirmative vote of 60% of the voting power at any duly called regular or special meeting of the Association. However, no material amendment of the Articles or Bylaws may be made without the prior written approval of institutions holding 75% of the first mortgages that are held by institutional holders on apartments in the condominium.

Section 14.3  Qualification for Membership. Each fee owner of an apartment (including Declarant) shall be a member of the Association and shall be entitled to one membership for each apartment owned; provided, that if an apartment has been sold on contract, the contract purchaser shall exercise the rights of the apartment owner for purposes of the Association, this Declaration, and the Bylaws, except as hereinafter limited, and shall be the voting representative unless otherwise specified. Ownership of an apartment shall be the sole qualification for membership in the Association.

Section 14.4  Transfer of Membership. The Association membership of each apartment owner (including Declarant) shall be appurtenant to the apartment giving rise to such membership, and shall not be transferred in any way except upon the transfer of title to the apartment and then only to the transferee of title to the apartment. Any attempt to make a prohibited transfer shall be void. Any transfer of title to an apartment shall operate automatically to transfer the membership in the Association to the new owner.

Section 14.5  Number of Votes. The total voting power of all owners shall be 100 votes and the total number of votes available to the owner of any one apartment shall be equal to the percentage of undivided interest in the common areas and facilities appertaining to the apartment. A person (including Declarant) who owns more than one apartment shall have the votes appertaining to each apartment owned.

Section 14.6  Voting Representative. An apartment owner may, by written notice to the Board, designate a voting representative for the apartment. The voting representative need not be an owner. The designation may be revoked at any time by written notice to the Board from a person having an ownership interest in an apartment, or by actual notice to the Board of the death or judicially declared incompetence of any person with an ownership interest in the apartment, except in cases in which the person designated is a mortgagee of the apartment. This power of designation and revocation may be exercised by the guardian of an apartment owner, the attorney-in-fact for the owner under a durable power of attorney, and the administrators or executors of an owner's estate. If no designation has been made, or if a designation has been revoked and no new designation has been made, the voting representative of each apartment shall be the group composed of all of its owners. If an apartment is owned by husband and wife and only one of them is at a meeting, the one who is present will represent the marital community.

-- 14 --

8/10/78
S:TRC

Section 14.7    Joint Owner Disputes.  The vote for an apartment must be cast as a single vote.  If joint owners are unable to agree how their vote shall be cast, they shall lose their right to vote on the matter in question.

Section 14.8    Vote Pledged to Mortgagee.  If an owner is in default under a mortgage on the apartment for 90 consecutive days, the mortgagee shall automatically be authorized to declare at any time thereafter that the apartment owner has pledged his or her vote on all issues to the mortgagee during the continuance of the default.  If the Board has been notified of any such pledge to a mortgagee, only the vote of the mortgagee will be recognized.  If more than one mortgage of an apartment claims a pledge, the vote of the mortgagee with the prior recorded interest will be recognized.

Section 14.9    Annual and Special Meetings.  There shall be an annual meeting of the members of the Association in the first quarter of each fiscal year at such reasonable place and time as may be designated by written notice from the Board delivered to the owners no less than 30 days before the meeting.  The audited financial statement for the preceding year and the budget the Board has adopted for the current year shall be presented at the annual meeting for the information of the members.  Special meetings of the members of the Association may be called at any time, in the manner provided in the Bylaws, for the purpose of considering matters which require the approval of all or some of the owners, or for any other reasonable purpose.  Any mortgagee of an apartment may attend or designate a representative to attend the meetings of the Association.

Section 14.10    Audits.  As soon as is convenient after the close of each fiscal year the Board shall have an audited financial statement prepared for that year.  The audited shall be made by a certified or licensed public accountant who is not a member of the board or an apartment owner.  The audit shall be completed in time for the Association's annual meeting and in any event within 90 days following the end of the fiscal year.  The Board, or persons having 35% of the voting power of the Association, may require that an audit of the Association and management books be presented at any special meeting.  An apartment owner, at his or her expense, may at any reasonable time conduct an audit of the books or the Board and Association.

Section 14.11    Books and Records.  The Board shall cause to be kept complete, detailed, and accurate books and records of the receipts and expenditures of the Association, in a form that complies with generally accepted accounting principles.

Section 14.12    Inspection of Condominium Documents, Books, and Records.  During normal business hours and at other reasonable times this Declaration, the Articles, the Bylaws, and other rules governing the operation of the condominium shall be available for inspection by the apartment owners, apartment mortgagees, prospective purchasers and

- 15 -

8/10/78
S:TRC

their prospective mortgagees, and the agents or attorneys of any of them and, in addition, at such times the books and records, authorizations for payment of expenditures, and all contracts, documents, papers, and other records of the Association shall be available for inspection by the apartment owners, apartment mortgagees, and the agents or attorneys of either of them.

ARTICLE 15.  NOTICES.

Section 15.1  Form and Delivery of Notice.  All notices given under the provisions of this Declaration or the Bylaws or rules or regulations of the Association shall be in writing and may be delivered either personally or by mail.  If delivery is made by mail, the notice shall be deemed to have been delivered on the third day of regular mail delivery after it has been deposited in the United States mail in King County, Washington, first class postage prepaid, addressed to the person entitled to such notice at the most recent address known to the Board.  Notice to the owner of an apartment shall be sufficient if mailed to the apartment if no other mailing address has been given to the Board.  Mailing addresses may be changed by notice in writing to the Board.  Notices to the Board shall be given to Declarant until the Transition Date and thereafter shall be given to the president or secretary of the Association.

Section 15.2  Notices to Mortgagees.  Any mortgagee of an apartment may file with the secretary of the Board a written request that it be given copies of notices.  The request may state the name and address of a mortgage servicer to whose care notices to the mortgagee are to be given.  Until such time thereafter as the mortgagee withdraws the request or satisfies the mortgage of record, the Board shall send to the requesting mortgagee a copy of (1) all notices of meetings of the Association; (2) all other notices sent to the owner of the apartment covered by the mortgagee's mortgage; (3) within 90 days following the end of any fiscal year, audited financial statements prepared pursuant to Section 14.10; (4) notices of any intention of the Association to transfer any part of the common areas or facilities, abandon condominium status, or terminate professional management of the condominium; and (5) prompt notice of any default in any apartment owner's obligations under any of the documents that create or govern the condominium, or its rules and regulations, that is not cured within 30 days of the date of default.  Institutional holders of first mortgages on apartments shall be entitled to notices under Article 24 (Damage and Repair of Damage to Property) and Article 25 (Condemnation) irrespective of whether they have filed requests for notices.  The provisions of this Section 15.2 shall prevail over any inconsistent or contrary provisions in this Declaration or in the Articles or Bylaws.

- 16 -

8/10/78
S:TRC

ARTICLE 16.  ADMINISTRATION OF PROPERTY; RIGHTS RETAINED BY DECLARANT.

    Section 16.1  Transition Date.  The "Transition Date" shall be the date control of the condominium passes from Declarant to the Association of Apartment Owners.  The Transition Date will be either (1) the date designated by Declarant in a written notice to the owners, which date may at Declarant's election be any date after this Declaration has been recorded; or (2) the 120th day after Declarant has transferred title to purchasers of apartments representing 75% of the total voting power of all apartment owners in the condominium as then constituted, or (3) the third anniversary of the first recording of a deed to an apartment purchaser (but not of a deed of the entire property); whichever of the foregoing occurs first.  If the Transition Date has occurred under the foregoing provision (2), later expansion into a Subsequent Phase and consequent reduction of the percentage of apartments sold in the condominium as then constituted will not reverse the fact that the transition has occurred, but if the Transition Date has not occurred before expansion into a Subsequent Phase, the 75% of the total voting power shall be determined on the basis of the voting power of all apartments then in the condominium.

    Section 16.2  Declarant's Powers Until Transition Date.  Until the Transition Date, Declarant shall have the full power and authority to exercise all of the rights, duties, and functions of the Board of Directors and the officers of the Association, including but not limited to the adoption of rules and regulations, contracting for the purchase of goods and services, buying insurance, and collecting and expending all assessments and other Association funds.  Declarant shall have the power to contract with an experienced professional managing agent and delegate to the managing agent all of the powers and duties of the Board that the Board is authorized to delegate under Section 17.4.  All such management contracts made by Declarant shall be subject to the same requirements as are set forth in Section 17.4 for management contracts made by the Board.  Declarant may at such times as it deems appropriate select and from time to time replace an interim board of directors, who need not be apartment owners or purchasers, who shall have all the powers, duties, and functions of the Board of Directors.  Any contract made by Declarant, its managing agent, or the interim board (including management contracts) that would otherwise extend beyond the Transition Date shall be terminable by the Board after the Transition Date upon 30 days' notice.

    Section 16.3  Transfer of Administration.  On the Transition Date the authority and responsibility to administer and manage the Association and the condominium, subject to this Declaration and the Bylaws, shall pass to the Association.  The Association shall be governed by a Board of directors elected from among the apartment owners.  The initial Board will have seven directors.  Declarant, its managing agent, or the interim board of directors will call a meeting of the Association to be held before the Transition Date for the purpose of electing the first Board.

8/10/79
S:TRC

ARTICLE 17.  AUTHORITY OF THE BOARD.

Section 17.1    Adoption of Rules and Regulations.  The Board is
empowered to adopt, amend, and revoke on behalf of the Association
detailed administrative rules and regulations necessary or convenient
from time to time to insure compliance with the general guidelines of
this Declaration and to promote the comfortable use and enjoyment of
the property.  The rules and regulations of the Association shall be
binding upon all apartment owners and occupants and all other persons
claiming any interest in the condominium.

Section 17.2    Enforcement of Declaration, Etc.  The Board (or
Declarant's managing agent, or the interim board of direc-
tors until the Transition Date) shall have the power and the duty to
enforce the provisions of this Declaration, the Articles, the Bylaws,
and the rules and regulations of the Association, as the same may be
lawfully amended from time to time, for the benefit of the Association.
If a legal action is brought to interpret or enforce compliance with
the provisions of this Declaration, the Articles, the Bylaws, or the
rules or regulations of the Association, the prevailing party shall be
entitled to judgment against the other party for its reasonable ex-
penses, court costs, and attorney's fees in the amount awarded by the
court.

Section 17.3    Goods and Services.  The Board shall acquire and
pay for as common expenses of the Association all goods and services
reasonably necessary or convenient for the efficient and orderly
functioning of the condominium.  The goods and services shall include
(by way of illustration and not limitation) utility services for the
common areas and facilities; policies of insurance and fidelity
bonds; legal and accounting services; maintenance, repair, landscaping,
gardening, and general upkeep of the common and limited common areas
and facilities; and all supplies, materials, fixtures, vehicles, and
equipment that are in the Board's judgment necessary or desirable for
the operation of the condominium and enjoyment of it by the owners.
The Board may hire such full-time or part-time employees as it con-
siders necessary.

Section 17.4    Managing Agent.  Until the Transition Date,
Declarant and the interim Board will employ an experienced professional
managing agent to assist in the management and operation of the condo-
minium and will delegate such of their powers and duties to the managing
agent as they deem to be appropriate, except as limited herein.  At any
time a managing agent is employed by the Board, the prior written
approval of institutions holding 75% of the first mortgages that are
held by institutional holders on apartments in the condominium shall be
required before the Board may terminate professional management and
assume self-management.  The managing agent shall not enter any apartment
(directly or through agents) without the consent of the occupant unless
entry has been directed by the Board.  Only the Board can approve an
annual budget or a supplemental budget, and only the Board can impose a

- 18 -

8/10/78
S:TRC

special assessment on an apartment or authorize foreclosure of an assessment lien. Any contract with a managing agent shall have a term no longer than one year (but may be renewable by agreement of the parties for successive one-year periods) and shall be terminable by the Board without payment of a termination fee, either (1) for cause, on 30 days' written notice, or (2) without cause, on not more than 90 days' written notice, or (3) for the managing agent at the Transition Date, as provided in Section 16.2.

Section 17.5    Protection of Property.    The Board may spend such funds and take such action as it may from time to time deem necessary to preserve the property, settle claims, commence or defend litigation, or otherwise act in what it considers to be the best interests of the condominium or the Association.

Section 17.6    Delegation to Umbrella Association.    The Board shall have the authority to delegate all or any clearly specified part of its duties and powers to the Umbrella Association by written contract that is mutually acceptable to the Board and the Umbrella Association. In the event of such a delegation all of the provisions of this Declaration for the protection of the Association, the Board, and its members (including but not limited to Articles 20, 21, and 22) shall be extended to include within their ambit the Umbrella Association and its agents, directors, and committee members with regard to their actions taken pursuant to the delegation.

ARTICLE 18.    BUDGET AND ASSESSMENT FOR COMMON EXPENSES.

Section 18.1    Fiscal Year.    The Board may adopt such fiscal year for the Association as it deems to be convenient. Unless another year is adopted, the fiscal year will be the calendar year.

Section 18.2    Preparation of Budget.    Not less than 30 days before the end of the fiscal year the Board shall prepare a budget for the Association for the coming year. In preparing its budget the Board shall estimate the common expenses of the Association to be paid during the year, make suitable provision for accumulation of reserves, and take into account any surplus or deficit carried over from the preceding year. Declarant or the interim Board shall prepare a budget for the remainder of the fiscal year in which this Declaration is recorded and for subsequent years until the Transition Date. If during the year the budget proves to be inadequate for any reason, including nonpayment of any assessments, the Board may prepare a supplemental budget for the remainder of the year.

Section 18.3    Monthly Assessments for Common Expenses.    The sums required by the Association for common expenses and reserves as reflected by the annual budget and any supplemental budgets shall be divided into equal installments to be paid each month over the period of time covered by the budget or supplemental budget. The monthly

-- 19 --

8/10/78
S:TRC

installments shall be assessed to the apartments (including apartments owned by Declarant) and their respective owners in proportion to the apartments' percentages of undivided interest in the common areas and facilities. Assessments for expenses and reserves for operations, maintenance, and insurance shall begin accruing (a) with respect to each apartment in the First Phase, upon the recording of the first deed by Declarant conveying title to an apartment to a purchaser and (b) with respect to apartments added in Subsequent Phases, upon the recording of the applicable Subsequent Phase Certificate. Assessments for reserves for replacements shall begin accruing (a) with respect to each apartment in the First Phase 60 days after the recording of the first deed by Declarant conveying title to an apartment to a purchaser, and (b) with respect to apartments added in Subsequent Phases, 60 days after the recording of the applicable Subsequent Phase Certificate. During such time as garbage collection charges and any other utility or service charges are based on the number of occupied apartments, any apartments owned by Declarant and not occupied shall be exempt from assessment for such charges.

Section 18.4 Special Assessments. If a special assessment becomes chargeable against an apartment under the authority of this Declaration or the Bylaws, the Board shall determine the amount of such special assessment and fix the month or months in which it is to be paid. The special assessment shall be added to the apartment's monthly installment of common expenses and be included in the assessment against the apartment.

Section 18.5 Notice of Assessment. The Board shall notify each apartment owner in writing of the amount of the monthly assessments to be paid for the apartment and shall furnish copies of each budget on which the assessments are based to all apartment owners and, if so requested, to their respective mortgagees.

Section 18.6 Payment of Monthly Assessments. On or before the first day of each calendar month each apartment owner shall pay or cause to be paid to the treasurer of the Association the assessment against the apartment for that month. Any assessment not paid by the first day of the calendar month for which it is due shall be delinquent and subject to late charges, interest charges, and collection procedures as provided in Article 19.

Section 18.7 Proceeds Belong to Association. All assessments and other receipts received by the Association on behalf of the condominium shall belong to the Association.

Section 18.8 Limitation on Assessments. During such time as Declarant continues to be the original owner of an apartment in the condominium and is offering it for sale, no budget shall be adopted or special assessment imposed that will cause the total assessments against any apartment in any month to be more than 10% greater than the total assessments against the apartment for the same month of the preceding calendar year. This limitation may be waived in writing, by Declarant only, for any one or more assessments. No person other than Declarant shall have the power either to assert or waive the limitation stated in this Section.

-- 20 --

8/10/78
5:TRC

Section 18.9    Failure to Assess.  Any failure by the Board or the Association to make the budget and assessments hereunder before the expiration of any year for the ensuing year shall not be deemed a waiver or modification in any respect of the provisions of this Declaration, or a release of the owners from the obligation to pay assessments during that or any subsequent year, and the monthly assessment amount established for the preceding year shall continue until a new assessment is established.

Section 18.10    Certificate of Unpaid Assessments.  Upon the request of the owner or mortgagee of an apartment, the Board will furnish a certificate in recordable form stating the amount, if any, of unpaid assessments against the apartment.  The certificate shall be conclusive upon the Board and the Association as to the amount of such indebtedness on the date of the certificate in favor of all purchasers and mortgagees of the apartment who rely on the certificate in good faith.  The Board may establish a reasonable fee to be charged to reimburse it for the cost of preparing the certificate.

ARTICLE 19.    LIEN AND COLLECTION OF ASSESSMENTS.

Section 19.1    Assessments Are a Lien; Priority.  All unpaid sums assessed by the Association for the share of the common expenses chargeable to any apartment and any sums specially assessed to any apartment under the authority of this Declaration or the Bylaws (together with interest, late charges, costs, and attorneys' fees in the event of delinquency) shall constitute a continuing lien on the apartment and all its appurtenances from the date the assessment became due until fully paid.  The lien for such unpaid assessments shall be subordinat to tax liens on the apartment in favor of any assessing unit and/or special district, and to all sums unpaid on all mortgages of record, but shall have priority over all other liens against the apartment.  A first mortgagee of an apartment that obtains possession through a mortgage foreclosure or deed of trust sale, or by taking a deed in lieu of foreclosure or sale, or a purchaser at a foreclosure sale, shall take the apartment free of any claims for the share of common expenses of assessments by the Association chargeable to the apartment that became due before such possession, but will be liable for the common expenses and assessments that accrue after the taking of possession; in which event the apartment's past-due share of common expenses or assessments shall become new common expenses chargeable to all of the apartment owners, including the mortgagee or foreclosure sale purchaser and their successors and assigns, in proportion to their respective percentages of undivided interest in the common areas and facilities; however, the owner and any contract purchaser shall continue to be personally liable for such past-due assessments, as provided in Section 19.3.  For the purpose of this section, the terms "mortgage" and "mortgagee" shall not mean real estate contracts or a vendor or a designee or assignee of a vendor under a real estate contract.

- 21 -

8/10/78
S:TRC

Section 19.2    Lien May be Foreclosed.  The lien for delinquent assessments may be foreclosed by suit by the managing agent or the Board, acting on behalf of the Association, in like manner as the foreclosure of a mortgage of real property.  The managing agent or the Board, acting on behalf of the Association, shall have the power to bid in the apartment at the foreclosure sale, and to acquire and hold, lease, mortgage, and convey the same.

Section 19.3    Assessments are Personal Obligations.  In addition to constituting a lien on the apartment and all its appurtenances, all sums assessed by the Association chargeable to any apartment (together with interest, late charges, costs, and attorneys' fees in the event of delinquency) shall be the joint and several personal obligations of the owner and any contract purchaser of the apartment when the assessment is made and their grantees.  Suit to recover personal judgment for any delinquent assessments shall be maintainable without foreclosing or waiving the liens securing them.

Section 19.4    Late Charges and Interest on Delinquent Assessments; Acceleration.  The Board may from time to time establish late charges and a rate of interest to be charged on assessments that may thereafter become delinquent.  In the absence of another established non-usurious rate, delinquent assessments shall bear interest at the rate of 12% per annum.  If a monthly assessment against an apartment is not paid when due the Board may elect to declare all monthly assessments against that apartment for the remainder of the fiscal year to be immediately due and payable.

Section 19.5    Recovery of Attorneys' Fees and Costs.  In any action to collect delinquent assessments, the prevailing party shall be entitled to recover as a part of its judgment a reasonable sum for attorneys' fees and expenses reasonably incurred in connection with the action, in addition to taxable costs permitted by law.

Section 19.6    Termination of Utility Service.  If an assessment becomes delinquent the Board may notify the delinquent apartment owner that unless the delinquent assessment is paid within ten days (or such longer time as is specified in the notice) any or all utility services furnished to the apartment by the Association or under the Association's control will be severed and will remain severed until the delinquent assessment has been paid.  If the delinquency is not cured in the time specified the Board may take the action described in the notice.

Section 19.7    Remedies Cumulative.  The remedies provided herein are cumulative and the Board may pursue them, and any other remedies which may be available under law although not expressed herein, either concurrently or in any order.

Section 19.8    Security Deposit.  An apartment owner who has been delinquent in paying the monthly assessments for three of the five preceding months may be required by the Board, from time to time,

-- 22 --

8/10/78
S:TRC

to make and maintain a security deposit not in excess of three months' estimated monthly assessments, which shall be collected and shall be subject to penalties for nonpayment as are other assessments. The deposit shall be held in a separate fund, credited to the owner, and may be resorted to at any time when the owner is ten days or more delinquent in paying assessments.

### ARTICLE 20. FAILURE OF BOARD TO INSIST ON STRICT PERFORMANCE NO WAIVER.

The failure of the Board in any instance to insist upon the strict compliance with this Declaration or the Bylaws or rules and regulations of the Association, or to exercise any right contained in such documents, or to serve any notice or to institute any action, shall not be construed as a waiver or a relinquishment for the future of any term, covenant, condition, or restriction. The receipt by the Board of payment of an assessment from an owner, with knowledge of a breach by the owner, shall not be a waiver of the breach. No waiver by the Board of any requirement shall be effective unless expressed in writing and signed for the Board. This Article also extends to the Declarant, Declarant's managing agent, and the interim board of directors, exercising the power of the Board before the Transition Date.

### ARTICLE 21. LIMITATION OF LIABILITY.

Section 21.1    Liability for Utility Failure, Etc. Except to the extent covered by insurance obtained by the Board, neither the Association nor the Board (nor the Declarant, Declarant's managing agent, or the interim board of directors) shall be liable for: the failure of any utility or other service to be obtained and paid for by the Board; or for injury or damage to person or property caused by the elements, or resulting from electricity, water, rain, dust, or sand that may lead or flow from outside or from any parts of the buildings, or from any of their pipes, drains, conduits, appliances, or equipment, or from any other place; or for inconvenience or discomfort resulting from any action taken to comply with any law, ordinance, or orders of a governmental authority. No diminution or abatement of common expense assessments shall be claimed or allowed for any such utility or service failure, or for such injury or damage, or for such inconvenience or discomfort.

Section 21.2    No Personal Liability. So long as a Board member, or Association committee member, or Association officer, or Declarant or the managing agent has acted in good faith, without willful or intentional misconduct, upon the basis of such information as is then possessed by such person, no such person shall be personally liable to any owner, or to any other person, including the Association, for any damage, loss, or prejudice suffered or claimed on account of

- 23 -

8/10/78
S:TRC

any act, omission, error, or negligence of such person; provided, that
this section shall not apply where the consequences of such act,
omission, error, or negligence are covered by insurance obtained by the
Board.

ARTICLE 22.  INDEMNIFICATION.

Each Board member and Association committee member and
Association officer, and Declarant and the managing agent shall be
indemnified by the Association against all expenses and liabilities,
including attorneys' fees, reasonably incurred by or imposed in connec-
tion with any proceeding to which he or she may be a party, or in which
he may become involved, by reason of holding or having held such posi-
tion, or any settlement thereof, whether or not he or she holds such
position at the time such expenses or liabilities are incurred, except
to the extent such expenses and liabilities are covered by any type of
insurance and except in such cases wherein such person is adjudged
guilty of willful misfeasance in the performance of his or her duties;
provided, that in the event of a settlement, the indemnification shall
apply only when the Board approves such settlement and reimbursement as
being for the best interests of the Association.

ARTICLE 23.  INSURANCE.

Section 23.1    General Requirements.  The Board shall cause the
Association to purchase and maintain at all times as a common expense a
policy or policies and bonds necessary to provide casualty insurance;
comprehensive liability insurance; fidelity bonds; worker's compensa-
tion insurance to the extent required by applicable laws; insurance
against loss of personal property of the Association by fire, theft, or
other causes with such deductible provisions as the Board deems advis-
able; insurance, if available, for the protection of the Association's
directors, officers, and representatives from personal liability in the
management of the Association's affairs; and such other insurance as
the Board deems advisable.  The Board shall review at least annually
the adequacy of the Association's insurance coverage.  All insurance
shall be obtained from an insurance carrier rated Triple B Plus or
better by Best's Insurance Reports or equivalent rating service, and
licensed to do business in the state of Washington.  Notwithstanding
any other provisions herein, the Association shall continuously main-
tain in effect casualty and liability insurance and a fidelity bond
that meets the insurance and fidelity bond requirements for condominium
projects established by the Federal National Mortgage Association and
the Government National Mortgage Association, so long as either is a
mortgagee or owner of an apartment within the condominium, except to
the extent such coverage is not available or has been waived in writing
by the Federal National Mortgage Association or Government National
Mortgage Association.  All such insurance policies and fidelity bonds
shall provide that coverage may not be cancelled or substantially

-- 24 --

8/10/78
S:TRC

modified (including cancellation for nonpayment of premium) without at least 30 days' prior written notice to any and all insureds named therein, including apartment owners, mortgagees, and designated servicers of mortgagees.

Section 23.2  Casualty Insurance. The casualty insurance shall, at the minimum, consist of a standard form of fire insurance policy with extended coverage endorsement in an amount equal to the full replacement value (i.e., 100% of current replacement cost exclusive of land, foundation, excavation, and other items normally excluded from coverage) of the common areas and facilities, apartments, and all fixtures and equipment belonging to the Association with an "Agreed Amount Endorsement" or its equivalent, if available, or an Inflation Guard Endorsement, and, if required by Federal National Mortgage Association, a "Demolition and Contingent Liability from Operation of Building Laws Endorsement," an "Increased Cost of Construction Endorsement," an "Earthquake Damage Endorsement," and such other endorsements as Federal National Mortgage Association deems necessary and are available. In addition to protection against loss or damage by fire and other hazards covered by the standard extended coverage endorsement, the policy shall provide protection against loss or damage from sprinkler leakage, debris removal, cost of demolition, vandalism, malicious mischief, windstorm, water damage, and such other risks as are customarily covered with respect to residential condominium projects of similar construction in the Greater Seattle metropolitan area. The policy or policies shall provide for separate protection for each apartment to the full insurable replacement value thereof (limited as above provided), and a separate loss payable endorsement in favor of the mortgagee or mortgagees of each apartment. The insurance proceeds may be made payable to any trustee with which the Association may enter into an insurance trust agreement, or any successor trustee, who shall have exclusive authority to negotiate losses under the policies. The policy or policies shall provide that, notwithstanding any provisions thereof which give the carrier the right to elect to restore damage in lieu of making a cash settlement, such option shall not be exercisable without the prior written approval of the Association (or any insurance trustee) or when in conflict with the provisions of any insurance trust agreement to which the Association may be a party, or any requirement of law.

Section 23.3  Comprehensive Public Liability Insurance. The comprehensive policy of public liability insurance shall insure the Board, the Association, the apartment owners, Declarant, and the managing agent, and cover all of the common areas and facilities in the condominium, with a "Severability of Interest Endorsement" or equivalent coverage which would preclude the insurer from denying the claim of an apartment owner because of the negligent acts of the Association or of another apartment owner, and shall include protection against water damage liability, liability for non-owned and hired automobiles, liability for property of others, and such other risks as are customarily covered with respect to residential condominium projects of

-- 25 --

8/10/78
S:TRC

similar construction in the Greater Seattle metropolitan area.  The limits of liability shall be not less than $1,000,000 covering all claims for personal injury and/or property damage arising out of a single occurrence.

Section 23.4    Additional Policy Provisions.  The insurance obtained pursuant to Sections 23.2 and 23.3 shall contain the following provisions and limitations:

23.4.1  The named insured shall be the Association, as trustee for each of the apartment owners in accordance with their respective percentages of undivided interest in the common areas and facilities.  The insurance proceeds may be made payable to any trustee with which the Association may enter into an insurance trust agreement, or any successor trustee, who shall have exclusive authority to negotiate losses under the policies.

23.4.2  Such policies shall not provide for contribution by or assessment against mortgagees or become a lien on the property superior to the lien of a first mortgage.

23.4.3  In no event shall the insurance coverage be brought into contribution with insurance purchased by the owner of the apartments or their mortgagees.

23.4.4  Coverage shall not be prejudiced by (a) any act or neglect of the owners of apartments when such act or neglect is not within the control of the Association, or (b) failure of the Association to comply with any warranty or condition with regard to any portion of the premises over which the Association has no control.

23.4.5  A waiver of subrogation by the insurer as to any and all claims against the Association, the owner of any apartment, and/or their respective agents, employees, or tenants, and of any defenses based upon co-insurance or upon invalidity arising from the acts of the insured.

23.4.6  A standard mortgagee clause which shall:

(a)  Provide that any reference to a mortgagee in the policy shall mean and include all holders of mortgages of any apartment or apartment lease or sublease in their respective order of preference, whether or not named therein;

(b)  Provide that such insurance as to the interest of any mortgagee shall not be invalidated by any act or neglect of the Board or apartment owners or any persons under any of them;

(c)  Waive any provision invalidating such mortgage clause by reason of the failure of any mortgagee to notify the insurer of any hazardous use or vacancy, any requirement that the mortgagee pay any premium thereon, and any contribution clause; and

-- 26 --

8/10/78
S:TRC

(d) Provide that, without affecting any protection afforded by such mortgagee clause, any proceeds payable under such policy shall be payable to the Board or the insurance trustee.

Section 23.5    Fidelity Bonds.  The required fidelity bonds shall afford coverage to protect against dishonest acts on the part of officers, directors, trustees, and employees of the Association or the managing agent and all other persons who handle or are responsible for handling funds of the Association and be in an amount that will provide a level of coverage that is generally considered adequate by prudently managed business concerns in King County.  In determining the bonding coverage, the Board may rely on the current advice of a competent independent insurance broker.  All such fidelity bonds shall name the Association as an obligee and contain waivers of any defense based upon the exclusion of persons who serve without compensation from any definition of "employee" or similar expression.

Section 23.6    Owners' Individual Insurance.  Each owner may obtain additional insurance on his or her apartment and its contents at the owner's expense but only if the owner's insurance does not decrease the amount that the Board, or any trustee for the Board, on behalf of all of the owners, will realize under any insurance policy that the Board may have in force on the property.  Each owner shall notify the Board of all improvements by the owner to the apartment the value of which is in excess of $1,000.  Any owner who obtains individual insurance policies covering any portion of the property other than personal property belonging to the apartment owner shall file a copy of the individual policy or policies with the Board within 30 days after it is purchased, and the Board shall immediately review its effect with the Board's insurance broker, agent, or carrier.

ARTICLE 24.  DAMAGE AND REPAIR OF DAMAGE TO PROPERTY

Section 24.1    Initial Board Determination.  In the event of damage to any part of the property, the Board shall promptly, and in all events within 30 days after the date of damage, make the following determinations with respect thereto, employing such advice as the Board deems advisable:

24.1.1  The nature and extent of the damage, together with an inventory of the improvements and property directly affected thereby.

24.1.2  A reasonably reliable estimate of the cost to repair the damage, which estimate shall, if reasonably practicable, be based upon two or more firm bids obtained from responsible contractors.

24.1.3  The expected insurance proceeds, if any, to be available from insurance covering the loss based on the amount paid or initially offered by the insurer.

- 27 -

8/10/78
S:TRC

24.1.4  The amount, if any, by which the estimated cost of repair exceeds the expected insurance proceeds, and the amount of the assessments that would have to be made against each apartment if the excess cost were to be paid as a maintenance expense and specially assessed against all the apartments in proportion to their percentages of undivided interest in the common areas and facilities.

24.1.5  The Board's recommendation whether the damage should be repaired.

Section 24.2  Notice of Damage.  The Board shall promptly, and in all events within 30 days after the date of damage, provide each owner and each institutional holder of a first mortgage on an apartment with a written notice describing the damage and summarizing the initial Board determinations made under Section 24.1.  If the Board fails to do so within said 30 days, any owner or mortgagee may make the determinations required under Section 24.1 and give the notice required under this Section 24.2.

Section 24.3  Definitions:  Damage, Substantial Damage, Repair, Emergency Work.  As used in this Article 24:

24.3.1  Damage shall mean all kinds of damage, whether of slight degree or total destruction.

24.3.2  Substantial Damage shall mean that in the judgment of a majority of the Board the estimated special assessment determined under subsection 24.1.4 for any one apartment exceeds 10% of the fair market value of the apartment before the damage occurred.

24.3.3  Repair shall mean restoring the improvements to substantially the condition they were in before they were damaged, with each apartment and the common areas and facilities having substantially the same vertical and horizontal boundaries as before.  Modifications to conform to applicable governmental rules and regulations or available means of construction may be made.

24.3.4  Emergency Work shall mean work that the Board deems reasonably necessary to avoid further damage or substantial diminution in value to the improvements and to protect the owners from liability from the condition of the site.

Section 24.4  Execution of Repairs.

24.4.1  The Board shall promptly repair the damage and use the available insurance proceeds therefor unless before the repairs (other than emergency work) are begun the owners decide in accordance with this Article not to repair.  If the cost of repair exceeds the available insurance proceeds the Board shall impose a special assessment against all apartments in proportion to their percentages of undivided interest in the common areas in an amount sufficient to pay the excess costs.

- 28 -

8/10/78
S:TRC

24.4.2  The Board shall have the authority to employ architects and engineers, advertise for bids, let contracts to contractors and others, and take such other action as is reasonably necessary to make the repairs.  Contracts for the repair work shall be awarded when the Board, by means of insurance proceeds and sufficient assessments, has provided for paying the cost.  The Board may authorize the insurance carrier to make the repairs if the Board is satisfied that the work will be done satisfactorily, and if such authorization does not contravene any insurance trust agreement or requirement of law.

24.4.3  The Board may enter into a written agreement with a reputable financial institution or trust or escrow company that the institution or company shall act as an insurance trustee to adjust and settle any claim for casualty loss in excess of $50,000, or for the institution or company to collect the insurance proceeds and carry out the provisions of this Article 24.

Section 24.5    Damage not Substantial.  If the damage as determined under subsection 24.3.2 is not substantial the provisions of this Section 24.5 shall apply.

24.5.1  Either the Board or the requisite number of owners, within 15 days after the notice required under Section 24.2 has been given, may but shall not be required to, call a special owners' meeting in accordance with Section 14.9 and the Bylaws to decide whether to repair the damage.

24.5.2  Except for emergency work, no repairs shall be commenced until after the 15-day period and until after the conclusion of the special meeting if such a special meeting is called within the 15 days.

24.5.3  A unanimous decision of the apartment owners and the holders of first mortgages on apartments will be required to elect not to repair the damage.  The failure of the Board and the owners within the 15-day period to call a special meeting shall be deemed a decision to repair the damage.

Section 24.6    Substantial Damage.  If the damage determined under subsection 24.3.2 is substantial the provisions of this Section 24.6 shall apply.

24.6.1  The Board shall promptly, and in all events within 30 days after the date of damage, call a special owners' meeting to consider repairing the damage.  If the Board fails to do so within 30 days, then notwithstanding the provisions of Section 14.9 and the Bylaws, any owner or first mortgagee of an apartment may call and conduct the meeting.

-- 29 --

8/10/78
S:TRC

24.6.2  Except for emergency work, no repairs shall be commenced until the conclusion of the special owners' meeting.

24.6.3  A concurring vote of more than two-thirds of the total voting power will be required to elect not to repair the damage. Failure of the Board, the owners, and the first mortgagees to conduct the special meeting provided for under subsection 24.6.1 within 90 days after the date of damage shall be deemed a unanimous decision not to repair the damage.

Section 24.7  Effect of Decision Not to Repair.  In the event of a decision under either subsection 24.5.3 or 24.6.3 not to repair the damage, the Board may nevertheless expend so much of the insurance proceeds and common funds as the Board deems reasonably necessary for emergency work (which emergency work may include but is not necessarily limited to removal of the damaged improvements and clearing, filling, and grading the land), and the remaining funds, if any, and the property shall thereafter be held and distributed as follows:

24.7.1  The property shall be owned in common by the apartment owners and shall no longer be subject to this Declaration or to condominium ownership.

24.7.2  Each apartment owner's percentage of undivided interest in the property shall be the same as the percentage of undivided interest he previously owned in the common areas and facilities.

24.7.3  Any mortgages or liens affecting any of the apartments shall be deemed transferred in accordance with the existing priorities to the apartment owner's percentage of the undivided interest in the property.

24.7.4  The property shall be subject to an action for partition at the suit of any apartment owner, in which event the net proceeds of sale, together with the net proceeds of the insurance on the property, if any, shall be considered as one fund.  The fund shall be divided into separate shares, one for each apartment owner in a percentage equal to the percentage of undivided interest owned by each such owner in the property.  After first paying out of the respective share of each apartment owner, to the extent sufficient for the purpose, all mortgages and liens on the owner's interest, the balance remaining in each share shall be distributed to the owner.

ARTICLE 25.  CONDEMNATION.

Section 25.1  Consequences of Condemnation; Notices.  If any apartment or portion thereof or the common areas and facilities or any portion thereof is made the subject matter of any condemnation or eminent domain proceeding or is otherwise sought to be acquired by a condemning authority (referred to herein as a "taking") notice of the

-- 30 --

8/10/78
S:TRC

proceeding or proposed acquisition shall promptly be given to each apartment owner and to each institutional holder of a first mortgage and the provisions of this Article 25 shall apply.

Section 25.2    Proceeds.  All compensation, damages, or other proceeds of the taking, the sum of which is hereinafter called the "Condemnation Award," shall be payable to the Association.

Section 25.3    Complete Taking.  If the entire property is taken the condominium ownership shall terminate.  The Condemnation Award shall be apportioned among the owners in proportion to their respective percentages of undivided interest in the common areas and facilities; provided, that if a standard different from the value of the property as a whole is employed to measure the Condemnation Award in the taking, then in determining such shares the same standard shall be employed to the extent it is relevant and applicable.  On the basis of the foregoing principle, the Board shall as soon as practicable determine the share of the Condemnation Award to which each owner is entitled.  Each owner's share shall be applied first to the payment of all mortgages and liens on the owner's interest in accordance with the existing priorities and the balance of each share shall be distributed to the owner.

Section 25.4    Partial Taking: Distribution of Proceeds.  If less than the entire property is taken the condominium ownership shall not terminate.  Each owner shall be entitled to a share of the Condemnation Award determined in the following manner:

25.4.1  As soon as practicable the Board shall, reasonably and in good faith, allocate the Condemnation Award among compensation for property taken, severance damages, or other proceeds.

25.4.2  The Board shall apportion the amounts so allocated to taking of or injury to the common areas and facilities, which in turn shall be apportioned among owners in proportion to their respective undivided interests in the common areas and facilities.

25.4.3  The total amount allocated to severance damages shall be apportioned to the apartments that were not taken.

25.4.4  The amounts allocated to the taking of or injury to a particular apartment and/or improvements an owner had made within the own apartment shall be apportioned to the apartment.

25.4.5  The amount allocated to consequential damages and any other takings or injuries shall be apportioned as the Board determines to be equitable in the circumstances.

25.4.6  If an allocation of the Condemnation Award has already been established in negotiation, judicial decree, or otherwise, then in apportioning the Condemnation Award the Board shall employ that allocation to the extent it is relevant and applicable.

- 31 -

8/10/78
S:TRC

25.4.7 Distribution of apportioned proceeds shall be made to the owners and their respective mortgagees in the manner provided in Section 25.3.

Section 25.5  Partial Taking: Reconstruction and Repair.  Any reconstruction and repair necessitated by condemnation shall be governed by the procedures specified in Article 24 for repair of damage, provided that the Board may retain and apply such portion of each owner's share of the Condemnation Award as is necessary to discharge the owner's liability for any special assessment arising from the operation of Article 24.

Section 25.6  Partial Taking: Taking of One or More Apartments; Continued Condominium Status of Remainder.

25.6.1  If one or more apartments are taken in a partial condemnation and the condemning authority does not agree to hold the apartments so taken as condominium apartments subject to the Condominium Statute, this Declaration, and the other documents governing this condominium, the apartments and the common areas and facilities so taken shall thereafter be totally excluded from the condominium and the apartments and common areas and facilities that were not acquired by the condemning authority shall then constitute this condominium.  Any remaining limited common areas and facilities that were appurtenant to apartments that were taken shall be general common areas and facilities of the condominium.

25.6.2  The remaining apartments' percentages of undivided interest in the common areas and facilities shall be recalculated on the basis of the values stated for them in Schedule D.  The sum of the stated values for the remaining apartments will be used in the recalculation as the total value of the property.

25.6.3  The Board shall have recorded in the public records such corrections of this Declaration and the Survey Map and Plans as are necessary to state accurately the revised percentages of undivided interest and the revised descriptions and survey of the property resulting from the partial taking of one or more apartments. Such corrective instruments need be signed only by the President and Secretary of the Board.

ARTICLE 26.  EASEMENTS AND RECIPROCAL RIGHTS; INTEGRATION OF PARCELS THROUGH UMBRELLA ASSOCIATION.

Section 26.1  In General.  Each apartment has an easement in and through each other apartment and the common areas and facilities for all support elements and utility, wiring, heat, and service elements, and for reasonable access thereto, as required to effectuate and continue proper operation of the condominium.  In addition, each apartment and all the common areas and facilities are specifically subject to

-- 32 --

8/10/78
S:TRC

easements as required for the electrical wiring and plumbing for each apartment. The specific mention or reservation of any easement in this Declaration does not limit or negate the general easement for common facilities reserved by law.

Section 26.2    Encroachments.  Each apartment and all common areas and facilities are hereby declared to have an easement over all adjoining apartments and common areas and facilities for the purpose of accommodating any present or future encroachment as a result of engineering errors, construction, reconstruction, repairs, settlement, shifting, or movement of any portion of the property, or any other similar cause, and any encroachment due to building overhang or projection.  There shall be valid easements for the maintenance of the encroaching apartments, areas, and facilities so long as the encroachments shall exist, and the rights and obligations of owners shall not be altered in any way by the encroachment; provided, however, that in no event shall a valid easement for encroachment be created in favor of an apartment owner if the encroachment was caused by the willful act with full knowledge of the apartment owner.  The encroachments described in this Section 26.2 shall not be construed to be encumbrances affecting the marketability of title to any apartment.

Section 26.3    Easement and Rights Reserved by Declarant.  Declarant hereby reserves non-exclusive easements over, across, and through the common areas and facilities of the condominium (i.e., Parcel A and such other Parcels as the condominium shall be expanded into in Subsequent Phases) for the benefit of itself and its successors and assigns as present and future owners of the other Parcels described in Schedule A.  The reserved easements are for ingress to and egress from the other Parcels over the roadways and pathways now or hereafter establishe  in the condominium and the right to have access to, over the common areas of the condominium, and to tie into and utilize any water, sanitary sewer, storm sewer, electricity, gas, telephone, cable television, and other utility lines now or hereafter established in the condominium. The easements reserved hereby shall not be exercised in a manner that will overload or materially impair the use and enjoyment of the roadways, pathways, and utilities by the owners of apartments in the condominium.  The easements reserved hereby shall benefit the other Parcels irrespective of whether one or more of them are added to the condominium in Subsequent Phases or are used for any other purpose.  Declarant reserves an easement over, across, and through the common areas and facilities of the condominium for the purpose of completing the remodeling or refurbishing of any apartments or other improvements and exhibiting and preparing apartments for sale.  Declarant reserves the right to use the lower level of the Administration Building on Parcel B and any apartments in the condominium owned by Declarant for use as sales or administrative offices or model apartments or other purposes reasonably necessary or convenient for Declarant's sales program and further reserves the right to use the office facilities in the Administration Building as a rental and general administrative office until such time as Declarant no longer owns as many as 25 apartments on all Parcels combined.

-- 33 --

8/10/78
S:TRC

Section 26.4    Role of Umbrella Association.  Parcels A through
H are now being operated as a single, integrated apartment complex.
Each of those Parcels contains some facilities (such as roads, recre-
ational facilities, maintenance facilities, and the like) that are
necessary or convenient for the economical and pleasurable enjoyment
of all of the Parcels.  To permit the continued availability of those
facilities to the owners and occupants of all of the Parcels, Declarant
has caused to be formed (or will as soon as possible after this Decla-
ration has been recorded) a non-profit corporation named Sixty-01
Umbrella Association.  The Umbrella Association is authorized by its
articles of incorporation and bylaws to operate, preserve, maintain,
repair, replace, and manage on behalf of and for the common benefit of
the owners and occupants of all of the land described in Schedule A the
common areas and facilities for which responsibility is assigned to it
by this Declaration and the areas and facilities for which responsibil-
ity is assigned to it by the condominium declarations recorded simul-
taneously herewith for the other Parcels.  Also recorded simultaneously
herewith by Declarant is the Sixty-01 Umbrella Declaration of Covenants,
Conditions, Restrictions, and Easements, all of which shall be binding
upon and inure to the benefit of the horizontal property regime created
by this Declaration.

Section 26.5    Assignment to Umbrella Association.  In consid-
eration of the similar assignments of powers and responsibility with
respect to areas and facilities by the condominium declarations re-
corded simultaneously herewith for the other Parcels, Declarant, for
itself and for the condominium established by this Declaration, hereby
assigns to the Umbrella Association the power and responsibility to
operate, preserve, maintain, repair, replace, and manage, on behalf of
and for the common benefit of the owners and occupants of all of the
land described in Schedule A, the common areas and facilities of this
condominium that are described in Schedule E.  The areas and facilities
of the other Parcels that are subject to similar assignments are al
set forth in Schedule E.

Section 26.6    Submission to Umbrella Association.  The Associ-
ation of Apartment Owners of this condominium and all persons who now
own or hereafter acquire an interest in the property or any part
thereof submit themselves to, and agree to be bound by, the articles
of incorporation, bylaws, and duly adopted rules and regulations of
the Umbrella Association, including but not limited to the power of the
Umbrella Association to levy and enforce the collection of assessments
against its members.

Section 26.7    Dissolution of Umbrella Association.  The Umbrella
Association's articles of incorporation provide in part that if the
land described in Schedule A (except such as may be taken for public
purposes) should become incorporated into one condominium under a
single horizontal property regime with a single association of apartment
owners, either through merger, expansion, or other means, the Umbrella
Association shall be dissolved.  Upon such dissolution, Sections 26.4,
26.5, and 26.6 shall have no further effect.

— 34 —

8/10/78
S:TRC

ARTICLE 27.   PROCEDURES FOR SUBDIVIDING OR COMBINING APARTMENTS.

   Section 27.1    Submission of Proposal.  No apartment or apartments
or common areas and facilities shall be subdivided and/or combined
either by agreement or legal proceedings, except as provided in this
Article.  An apartment owner may propose subdividing and/or combining of
an apartment or apartments, or common areas and facilities by submitting
the proposal in writing to all other apartment owners and the mortgagees
of the apartments to be subdivided or combined.  If the proposal contem-
plates the subdivision of an apartment, the proposal must also be given
to every first mortgagee of any apartment in the condominium.  The pro-
posal must include complete plans and specifications for accomplishing
the subdivision or combination and proposed amendments of this Declara-
tion and the Plans and, if necessary, the Survey Map.

   Section 27.2    Approval Required for Subdivision.  A proposal
that contemplates subdivision of an apartment will be accepted only if
approved in writing by all owners and mortgagees of the apartment or
apartments to be subdivided, the owners of 80% of the total undivided
interest in the common areas and facilities, and every first mortgagee.

   Section 27.3    Approval Required for Combination.  A proposal
that contemplates only combination of apartments without subdividing
any of them will be accepted if approved in writing by the owners of
60% of the total undivided interest in the common areas and facili-
ties and all owners and mortgagees of the apartments to be combined,
for the protection of other apartments or common areas and facilities
or that reasonable deadlines for completion of the work be inserted
in the contracts for the work.  The changes in the Survey Map, if
any, and the changes in the Plans and Declaration shall be placed of
record as amendments thereto.

   Section 27.4    Procedure After Approval.  Upon approval of the
proposal, the owner making it may proceed according to the proposed
plans and specifications; provided that the Board may in its discre-
tion require that the Board administer the work or that provisions
for the protection of other apartments or common areas and facilities
or that reasonable deadlines for completion of the work be inserted
in the contracts for the work.  The changes in the Survey Map, if
any, and the changes in the Plans and Declaration shall be placed of
record as amendments thereto.

ARTICLE 28.   AMENDMENTS OF DECLARATION, SURVEY MAP, AND PLANS.

   Section 28.1    Amendments by the Association.  An apartment
owner may propose amendments to this Declaration, the Survey Map, c
the Plans to the Board.  A majority of the members of the Board may
cause a proposed amendment to be submitted to the members of the Asso-
ciation for their consideration.  If an amendment is proposed by owners
of 20% or more of the apartments in the condominium, then, irrespective

-- 35 --

8/10/78
S:TWC

of whether the Board concurs in the proposed amendment, it shall be submitted to the members of the Association for their consideration at their next regular or special meeting for which timely notice may be given. Notice of a meeting at which an amendment is to be considered shall include the text of the proposed amendment. Amendments may be adopted at a meeting of the Association or by written consent of the requisite number of persons entitled to vote, after notice has been given to all persons (including mortgagees) entitled to receive notice of a meeting of the Association. The unanimous consent of all apartment owners shall be required for adoption of either (1) an amendment altering the value of the property and of each apartment or the percentages of undivided interest in the common areas and facilities (it being understood that changes in such percentages of undivided interest resulting from expansion of the condominium into a Subsequent Phase or Phases will not be deemed an amendment hereof), or (2) a decision that the property be removed from condominium status, or (3) an amendment that in any way alters or restricts Declarant's powers or procedures for expanding the condominium into Subsequent Phases or electing not to do so, or (4) an amendment of Section 14.7 or of this Article 28. All other amendments shall be adopted if approved by 60% of the apartment owners and there is compliance with Section 28.2. Once an amendment has been adopted by the Association and any necessary approval of mortgagees has been obtained, the amendment will become effective when a certificate of the amendment, executed by two officers of the Association, has been recorded in the public records.

Section 28.2   Requirement of Mortgagee Approval.  In addition to other provisions of this Declaration and of the Condominium Statute, for amendments of this Declaration or the Bylaws, the prior written approval of each institutional holder of a first mortgage will be required for any amendment that would change the percentages of undivided interest in the common areas and facilities of the apartment owners (except for merger or expansion into Subsequent Phases that may be made by Declarant as provided in Article 3 and in Section 28.1(1)), and any amendment that in any way alters or restricts Declarant's powers or procedures under Article 3; and the prior written approval of institutions holding 75% of the first mortgages that are held by institutional holders on apartments in the condominium shall be required for any other material amendment.

ARTICLE 29.   ABANDONMENT OR TERMINATION OF CONDOMINIUM STATUS.

Except in cases of substantial damage to the property as provided in Article 24, the condominium status of the property shall not be abandoned or terminated by reason of any act or omission by the owners or the Association except with the consent of all apartment owners by an instrument to that effect duly recorded, and then only if the mortgagees and holders of all liens affecting any of the apartments consent thereto or agree, in either case by an instrument duly recorded, that their mortgages and liens be transferred to the percentage of the undivided interest of the apartment owner in the property.

- 36 -

8/10/78
S:TRC

ARTICLE 30.  SEVERABILITY.

The provisions of this Declaration shall be independent and severable, and the unenforceability of any one provision shall not affect the enforceability of any other provision, if the remainder complies with the Condominium Statute or, as covenants, effect the common plan.

ARTICLE 31.  EFFECTIVE DATE.

This Declaration shall take effect upon recording.

ARTICLE 32.  INCORPORATION OF SCHEDULES BY REFERENCE; RECORDING OF SURVEY MAP AND PLANS.

Schedules A through E referred to in this Declaration are attached hereto and by this reference are incorporated herein.  The Survey Map and Plans were filed with the Recorder of King County, Washington, simultaneously with the recording of this Declaration under File No. _7808300898_ , in Volume _23_ of Condominiums, pages _34_ through _53_ .

ARTICLE 33.  ASSIGNMENT BY DECLARANT.

Declarant reserves the right to assign, transfer, sell, lease, or rent all or a portion of the property then owned by it an reserves the right to assign all or any of its rights, duties, and obligations created under this Declaration.

DECLARANT

SIXTY - 01 ASSOCIATES, a partnership

By _____
Orville Cohen, a general partner

-- 37 --

8/10/78

STATE OF WASHINGTON )
) ss.
COUNTY OF KING )

On this day personally appeared before me ORVILLE COHEN, to me known to be a General Partner of Sixty-01 Associates, the general partnership described in the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of said general partnership for the uses and purposes therein mentioned, and on oath stated that he was authorized to execute the said instrument on behalf of the general partnership.

GIVEN under my hand and official seal this 21st day of August, 1978.

Notary Public in and for the
State of Washington, residing
at _Redmond_

~ 38 ~

8/10/78
S:TRC

## LEGAL DESCRIPTION

### PARCEL "A"

All that portion of the East ½ of the Southwest ¼ of Section 10, Township 25 North, Range 5 East, W.M. in King County, Washington, described as follows: Commencing at the Southeast corner of the Southwest ¼ of said Section 10; thence North 87°38'13" West, along the South line of said Southwest ¼, a distance of 40.00 feet to the TRUE POINT OF BEGINNING on the West Right of Way line of 140th Avenue N.E. as dedicated per Deed Auditor's file No. 7605290589; thence continuing North 87°38'13" West, along the South line of said Southwest ¼, a distance of 1,143.49 feet to a line drawn 130.00 feet East of and parallel with the West line of the East ½ of the Southwest ¼ of said Section 10 (as measured perpendicularly to said West line); thence North 01°30'17" East, along said parallel line, 364.00 feet; thence North 89°30'17" East 133.00 feet; thence South 56°25'49" East, 256.00 feet; thence North 28°00'00" East, 142.00 feet; thence North 85°29'39" East, 548.70 feet; thence South 86°28'33" East, 180.00 feet to the aforesaid West Right of Way line of 140th Avenue N.E.; thence South 01°31'27" West, along said Right of Way line, 442.00 feet to the true point of beginning.



SCHEDULE A
-1-

2100 NORTHRUP WAY • BELLEVUE, WA 98004 • (206) 827-9555

7808390899

## LEGAL DESCRIPTION

### PARCEL "B"

All that portion of the East ½ of the Southwest ¼ of Section 10, Township 25 North, Range 5 East, W.M. in King County, Washington, described as follows:

Commencing at the Southeast corner of the Southwest ¼ of said Section 10; thence North 87°38'13" West, along the South line of said Southwest ¼, a distance of 40.00 feet to the West Right of Way line of 140th Avenue N.E. as dedicated per Deed, Auditor's file No. 7505290589, thence North 01°31'27" East, along said Right of Way line, 442.00 feet to the TRUE POINT OF BEGINNING; thence continuing North 01°31'27" East, along said Right of Way line, 972.41 feet; thence North 88°28'33" West, 76.03 feet; thence South 38°43'43" West, 25.10 feet; thence North 56°13'02" West, 57.81 feet; thence South 80°34'55" West, 69.42 feet; thence South 55°33'58" West, 126.83 feet; thence North 44°26'02" West, 31.02 feet; thence North 83°04'33" West, 71.03 feet; thence South 85°11'43" West, 80.69 feet; thence North 74°00'35" West, 80.60 feet; thence North 55°52'43" West, 62.34 feet; thence South 72°57'24" West, 46.90 feet; thence South 58°17'41" West, 56.25 feet; thence South 29°05'55" East, 77.47 feet; thence South 14°05'04" East, 65.17 feet; thence South 10°38'13" East, 71.17 feet; thence South 31°57'26" West, 34.72 feet; thence North 66°52'49" East, 105.00 feet; thence South 21°45'54" East, 384.20 feet; thence South 14°07'06" East, 412.11 feet; thence North 85°29'39" East, 114.00 feet; thence South 38°28'33" East, 180.00 feet to the TRUE POINT OF BEGINNING.

SCHEDULE A
-2-

## LEGAL DESCRIPTION

### PARCEL "C"

All that portion of the East 1/2 of the Southwest 1/4 of Section 10, Township 25 North, Range 5 East, W.M. in King County, Washington, described as follows:

Commencing at the point of intersection of a line drawn 838.85 feet West of and parallel with the East line of the Southwest 1/4 of said Section 10 (measured perpendicularly to said East line) with the Southerly Right of Way line of N.E. 70th Street (formerly Collins Road) as dedicated per Deed, Auditor's file No. 7108060512 as corrected per Deed Auditor's file No. 7807100558  said Southerly Right of Way line having a bearing North 84°23'00" East, thence South 05°37'00" East, 76.50 feet; thence South 49°57'28" East, 37.44 feet; thence South 05°37'00" East, 37.50 feet; thence South 67°32'57" East, 146.58 feet; thence South 22°56'27" East, 198.17 feet to the TRUE POINT OF BEGINNING; thence South 78°01'05" West, 219.33 feet; thence North 88°23'56" West 189.08 feet; thence South 01°36'04" West, 24.03 feet; thence North 88°23'56" West, along radial line, 30.00 feet to the point of curvature of a curve to the left, whose radius, at said point bears South 88°23'56" East and has a distance of 320.00 feet; thence Southeasterly, along said curve to the left, through a central angle of 28°30'09" an arc distance of 159.19 feet; thence South 26°54'05" East, 56.62 feet; thence South 35°27'09" East, 40.00 feet; thence North 54°32'51" East, 22.00 feet; thence South 35°27'09" East, 20.00 feet; thence North 54°32'51" East, 23.50 feet; thence South 35°27'09" East, 101.25 feet; thence South 01°16'00" West, 27.73 feet; thence South 88°44'00" East, 90.00 feet; thence South 44°33'45" East, 45.61 feet to the point of curvature of a curve to the left, whose radius, at said point, bears North 45°26'15" East and has a length of 175.00 feet; thence Southeasterly along said curve to the left, through a central angle of 28°44'15" an arc distance of 87.77 feet; thence South 73°18'00" East, 47.61 feet; thence North 16°42'00" East, 20.88 feet; thence South 73°18'00" East, 36.76 feet to the point of curvature of a curve to the left whose radius, at said point, bears North 16°42'00" East and has a length of 65.00 feet; thence Easterly, along said curve to the left, through a central angle of 45°42'00" an arc distance of 51.85 feet; thence North 61°00'00" East, 95.56 feet; thence South 29°00'00" East, 23.48 feet; thence North 61°00'00" East, 50.80 feet; thence South 37°40'00" East, 130.29 feet; thence South 22°00'00" West, 68.06 feet; thence North 68°00'00" West, 12.00 feet; thence South 26°00'00" West, 51.24 feet; thence North 55°33'58" East, 76.73 feet; thence

### SCHEDULE A
—3—

8/23/79
S:TRC

7808300899

LEGAL DESCRIPTION
PARCEL "C" (continued)

North 80°34'55" East, 69.42 feet; thence South 56°13'02" East,
57.81 feet; thence South 88°28'33" East, 76.03 feet to the point of
intersection with the West Right of Way line of 140th Avenue N.E.
per Deed, Auditor's file No. 7506090437, said point of intersection
being 1414.41 feet North of the South line of the Southwest 1/4
of said Section 10 (as measured along said West Right of Way line);
thence North 01°31'27" East, along said Right of Way line, 577.15
feet to the point of intersection with the Southerly Right of Way
line of N.E. 70th Street per the aforesaid Deed Auditor's file No.
7108060512 and No.7807100558 ; thence along the following courses
being said Southerly Right of Way line: Northwesterly, along a
curve to the left whose radius, at said point of intersection,
bears North 88°28'33" West and has a length of 20.00 feet, through
a central angle of 82°26'18", an arc distance of 28.78 feet,
North 80°54'51" West, 35.81 feet to the point of curvature of a
curve to the right, whose radius, at said point, bears North 09°05'09"
East and has a length of 280.00 feet, Northwesterly, along said
curve to the right, through a central angle of 32°28'24" an arc
distance of 158.69 feet; thence North 48°26'27" West, 112.00 feet;
thence South 41°33'33" West, 100.00 feet; thence South 48°26'27"
East, 112.00 feet; thence South 57°33'33" West, 73.00 feet; thence
North 68°56'27" West, 75.00 feet; thence North 84°56'27" West,
145.00 feet to the TRUE POINT OF BEGINNING.

SCHEDULE A
-3a-

7808300899

*JONES*
ASSOCIATES INC

*CONSULTING
ENGINEERS*

LEGAL DESCRIPTION

PARCEL "D"

All that portion of the East ½ of the Southwest ¼ of Section 10,
Township 25, North, Range 5 East, W.M. in King County, Washington
lying West of the West Right of Way line of 140th Avenue N.E. per
Deed Auditor's File No. 7506090437, lying East of the center line
of vacated Spruce Street and lying Northerly of the Northerly Right
of Way line of N.E. 70th Street (formerly Collins Road) as dedicated
per Deed, Auditor's File No. 7108060512 as corrected per Deed,
Auditor's File No. 7807100558



SCHEDULE A

-- A --

2700 NORTHUP WAY • BELLEVUE, WA 98004 • (206) 827-9555

LEGAL DESCRIPTION

PARCEL "T"

All that portion of the East ½ of the Southwest ¼ of Section 10, Township 25 North, Range 5 East, W.M. in King County, Washington, described as follows:

Beginning at the point of intersection of a line drawn 828.85 feet West of and parallel with the East line of the Southwest ¼ of said Section 10 (measured perpendicularly to said East line), with the Southerly Right of Way line of N.E. 70th Street (formerly Collins Road) as dedicated per Deed Auditor's file No. 7108060512, as corrected per Deed Auditor's file No. 7807100558 said Southerly Right of Way line having a bearing North 84°23'00" East; thence South 05°37'00" East, 76.50 feet; thence South 49°57'28" East, 37.44 feet; thence South 05°37'00" East, 37.50 feet; thence South 67°32'57" East, 146.58 feet; thence South 22°58'27" East, 198.17 feet; thence South 76°01'05" West, 210.33 feet; thence North 88°23'56" West, 189.08 feet; thence South 01°36'04" East, 24.00 feet; thence North 88°23'56" West, along a radial line, 30.00 feet to the point of curvature of a curve to left, whose radius, at said point bears South 88°23'56" East and has a length of 320.00 feet; thence Southeasterly along said curve to the left, through a central angle of 28°30'09" an arc distance of 159.19 feet; thence South 26°54'05" East, 56.62 feet; thence South 55°04'46" West, 145.00 feet; thence North 34°55'14" West, 80.00 feet; thence North 22°27'15" West, 119.57 feet; thence North 88°32'16" West, 148.00 feet; to the center line of vacated Spruce Street; thence North 01°27'42" East, along said center line 500.98 feet to the aforesaid Southerly Right of Way line of N.E. 70th Street; thence North 84°23'00" East along said Right of Way line, 469.35 feet to the point of beginning.

8/23/78
S:TRC

SCHEDULE A
-5-

LEGAL DESCRIPTION

PARCEL "F"

All that portion of the East 1/2 of the Southwest 1/4 of Section 10,
Township 25 North, Range 5 East, W.M. in King County, Washington
described as follows:

Commencing at the Northwest corner of the Southeast 1/4 of the
Southwest 1/4 of said Section 10; thence South 87°58'22" East,
along the North line of the Southeast 1/4 of said Southwest 1/4 a
distance of 10.28 feet to the point of intersection with the
center line of vacated Spruce Street, said point of intersection
being the TRUE POINT OF BEGINNING of the herein described parcel
of land; thence North 01°27'42" East, along said center line,
449.12 feet to a point 500.98 feet (as measured along said center
line) Southerly of the Southerly Right of Way line of N.E. 70th
Street (formerly Collins Road) as dedicated per Deed Auditor's
file No. 7108060512 as corrected per Deed Auditor's file No.
7807/0065B; thence South 88°32'18" East 148.00 feet; thence South
22°27'15" East, 119.57 feet; thence South 34°55'14" East, 80.00
feet; thence North 55°04'46" East, 145.00 feet; thence South
35°27'09" East, 40.00 feet; thence North 54°32'51" East, 22.00
feet; thence South 35°27'09" East 20.00 feet; thence North 54°32'51"
East, 23.50 feet; thence South 35°27'09" East, 101.25 feet; thence
South 01°16'00" West, 27.73 feet; thence South 88°44'00" East,
90.00 feet; thence South 44°33'45" East, 45.61 feet to the point
of curvature of a curve to the left whose radius, at said point
bears North 45°26'15" East and has a length of 175.00 feet; thence
Southeasterly along said curve to the left, through a central
angle of 28°44'15" an arc distance of 87.77 feet; thence South
73°18'00" East, 47.61 feet; thence North 16°42'00" East, 20.66
feet; thence South 73°18'00" East, 36.76 feet to the point of
curvature of a curve to the left whose radius, at said point
bears North 16°42'00" East and has a length of 65.00 feet; thence
Easterly, along said curve to the left through a central angle of
45°42'00" an arc distance of 51.85 feet; thence North 61°00'00"
East 95.56 feet; thence South 29°00'00" East, 23.48 feet; thence
North 61°00'00" East, 50.80 feet; thence South 37°40'00" East,
130.29 feet; thence South 22°00'00" West 68.00 feet; thence
North 68°00'00" West, 12.00 feet; thence South
26°00'00" West 51.24 feet; thence South 55°33'58" West, 50.12
feet; thence North 44°26'02" West, 31.02 feet; thence North 83°04'33"
West, 71.03 feet; thence South 85°11'43" West, 80.69 feet; thence
North 74°00'35" West, 80.60 feet; thence North 55°52'43" West,
62.34 feet; thence South 72°57'24" West, 46.90 feet; thence South
58°17'41" West, 56.25 feet; thence South 29°05'55" East, 77.47
feet; thence South 14°05'04" East, 65.17 feet; thence South 10°38'13"
East, 71.17 feet; thence South 31°57'26" West, 34.72 feet; thence
South 66°52'49" West, 238.30 feet; thence North 89°52'33" West,
111.10 feet; thence North 05°23'04" West, 113.99 feet; thence North
89°52'48" West 164.62 feet; thence North 00°30'13" East, 229.10
feet; thence South 82°53'55" West, 102.85 feet to the TRUE POINT
OF BEGINNING.

SCHEDULE A
-6-

8/23/78
S:TRC

JONES
ASSOCIATES INC

CONSULTING
ENGINEERS

LEGAL DESCRIPTION

PARCEL "G"

All that portion of the East ½ of the Southwest ¼ of Section 10, Township 25 North, Range 5 East, W.M. in King County, Washington, described as follows: Commencing at the Southwest corner of the East ½ of the Southwest ¼ of said Section 10; thence North 01°30'17" East, along the West line thereof, 812.00 feet to the TRUE POINT OF BEGINNING; thence continuing North 01°30'17" East, 526.12 feet to the Northwest corner of the Southeast ¼ of the Southwest ¼ of said Section 10; thence South 87°58'22" East, along the North line of the Southeast ¼ of the Southwest ¼ of said Section 10, a distance of 10.28 feet; thence North 82°53'55" East, 102.85 feet; thence South 00°30'13" West, 229.10 feet; thence South 89°52'48" East, 164.62 feet; thence South 05°23'04" East, 113.99 feet; thence South 89°52'33" East 111.10 feet; thence North 66°52'49" East, 343.30 feet; thence South 21°45'54" East, 384.20 feet; thence South 82°01'29" West 262.19 feet; thence South 06°30'00" West, 20.18 feet; thence South 22°19'00" West, 110.00 feet; thence South 35°37'00" West, 23.00 feet; thence North 54°22'00" West 125.00 feet; thence North 30°07'05" West, 139.85 feet; thence North 38°29'43" West, 380.00 feet to the true point of beginning.



2709 NORTHRUP WAY ◦ BELLEVUE, WA 98004 ◦ (206) 827-9555

LEGAL DESCRIPTION

PARCEL "II"

All that portion of the East ½ of the Southwest ¼ of Section 10, Township
25 North, Range 5 East, W.M. in King County, Washington, described as
follows:

Beginning at the Southwest corner of the East ½ of the Southwest ¼ of
said Section 10; thence South 87°38'13" East, along the South line of
said Southwest ¼ a distance of 130.01 feet; thence North 01°30'17" East,
along a line 130.00 feet East of and parallel with the West line of the
East ½ of the Southwest ¼ of said Section 10, a distance of 364.00 feet;
thence North 89°30'17" East, 133.00 feet; thence South 58°25'49" East,
256.00 feet; thence North 28°00'00" East 142.00 feet; thence North
85°29'39" East, 434.70 feet; thence North 14°07'08" West, 412.11 feet;
thence South 62°01'29" West, 262.19 feet; thence South 06°30'00" West,
20.18 feet; thence South 22°19'00" West, 110.00 feet; thence South
35°37'00" West, 23.00 feet; thence North 54°22'00" West, 125.00 feet;
thence North 30°07'05" West, 139.85 feet; thence South 89°29'43" West,
380.00 feet to the West line of the East ½ of the Southwest ¼ of said
Section 10; thence South 01°30'17" West, along said West line, 812.00 feet
to the point of beginning.



7808300899

SCHEDULE A
--8--

2700 NORTHRUP WAY • BELLEVUE, WASHINGTON • (206) 827-9595

SCHEDULE B

SIXTY-01

Location and Description of Buildings

| Building Number | Address | Building Style | Number of Stories | Number of Apartments |
|---|---|---|---|---|
| 11 | 13954 N.E. 60th Way | B | 2 | 14 |
| 12 | 6049 – 139th Ave. N.E. | A | 3 | 16 |
| 13 | 13932 N.E. 60th St. | D | 3 | 12 |
| 14 | 13872 N.E. 60th Way | C | 2 | 6 |
| 15 | 13846 N.E. 60th Way | C | 2 | 6 |
| 16 | 13838 N.E. 60th St. | D | 3 | 21 |
| 17 | 13782 N.E. 60th Way | C | 2 | 8 |
| 19 | 13772 N.E. 60th St. | D | 3 | 9 |
| 21 | 6051 – 137th Ave. N.E. | E | 4 | 32 |

All street addresses are in Redmond, Washington 98052.

Schedule B

SCHEDULE C

SIXTY-01

Location and Description of Apartments

| Apt. No. | Building No.-Style | Floor Level | Apartment Type | Total Number Rooms* | Approx. Apt. Floor Area** | Approx. Area of Patio or Lanai** |
|---|---|---|---|---|---|---|
| 97 | 11-B | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1122 | 91 |
| 98 | 11-B | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1122 | 91 |
| 99 | 11-B | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1122 | 91 |
| 100 | 11-B | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1122 | 91 |
| 101 | 11-B | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1122 | 91 |
| 102 | 11-B | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1122 | 91 |
| 103 | 11-B | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1122 | |
| 104 | 11-B | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1122 | 91 |
| 105 | 11-B | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1122 | 91 |
| 106 | 11-B | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1122 | 91 |
| 107 | 11-B | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1122 | 91 |
| 108 | 11-B | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1122 | 91 |

*Room count does not include bathroom.
**Areas are expressed in square feet.

Schedule C
- 1 -

| Apt. No. | Building No.-Style | Floor Level | Apartment Type | Total Number Rooms* | Approx. Apt. Floor Area** | Approx. Area of Patio or Lanai** |
|---|---|---|---|---|---|---|
| 109 | 11-B | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1122 | 91 |
| 110 | 11-B | Upper & Lower | Twn.hse. 2 bdrm | 4 | 1122 | 91 |
| 111 | 14-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 112 | 14-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 113 | 14-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 114 | 14-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 115 | 14-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 116 | 14-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 117 | 15-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 / 4 | 1200 / 1200 | 1C / 100 |
| 118 | 15-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 / 4 | 1200 / 1200 | 100 / 100 |
| 119 | 15-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 120 | 15-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 121 | 15-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 122 | 15-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |

*Room count does not include bathroom.
**Areas are expressed in square feet.

Schedule C
- 2 -

| Apt. No. | Building No.-Style | Floor Level | Apartment Type | Total Number Rooms* | Approx. Apt. Floor Area** | Approx. Area of Patio or Lanai** |
|---|---|---|---|---|---|---|
| 123 | 17-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 124 | 17-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 125 | 17-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 126 | 17-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 127 | 17-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 128 | 17-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 129 | 17-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 130 | 17-C | Upper & Lower | Twn.hse. 2 bdrm. | 4 | 1200 | 100 |
| 131 | 12-A | Lower | Studio | 2 | 452 | 43 |
| 132 | 12-A | Lower | Studio | 2 | 452 | 43 |
| 133 | 12-A | Lower | Studio | 2 | 452 | 43 |
| 134 | 12-A | Lower | Studio | 2 | 452 | 43 |
| 135 | 12-A | Lower | Studio | 2 | 452 | 43 |
| 136 | 12-A | Lower | Studio | 2 | 452 | 43 |
| 137 | 12-A | Lower | Studio | 2 | 452 | 43 |
| 138 | 12-A | Lower | Studio | 2 | 452 | 43 |
| 139 | 12-A | Upper | Twn.hse. 2 bdrm. | 4 | 1140 | 43 |

*Room count does not include bathroom.
**Areas are exoressed in square feet.

Schedule C
- 3 -

| Apt. No. | Building No.-Style | Floor Level | Apartment Type | Total Number Rooms* | Approx. Apt. Floor Area** | Approx. Area of Patio or Lanai** |
|---|---|---|---|---|---|---|
| 140 | 12-A | Upper | Twn.hse. 2 bdrm. | 4 | 1140 | 43 |
| 141 | 12-A | Upper | Twn.hse. 2 bdrm. | 4 | 1140 | 43 |
| 142 | 12-A | Upper | Twn.hse. 2 bdrm. | 4 | 1140 | 43 |
| 143 | 12-A | Upper | Twn.hse. 2 bdrm. | 4 | 1140 | 43 |
| 144 | 12-A | Upper | Twn.hse. 2 bdrm. | 4 | 1140 | 43 |
| 145 | 12-A | Upper | Twn.hse. 2 bdrm. | 4 | 1140 | 43 |
| 146 | 12-A | Upper | Twn.hse. 2 bdrm. | 4 | 1140 | 43 |
| 147 | 13-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 148 | 13-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 149 | 13-D | 3 | 1 bdrm. Penthse. | 4 | 826 | 91 |
| 150 | 13-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 151 | 13-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 152 | 13-D | 3 | 1 bdrm. Penthse. | 4 | 826 | 91 |
| 153 | 13-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |

*Room count does not include bathroom.
**Areas are expressed in square feet.

Schedule C
- 4 -

| Apt. No. | Building No.—Style | Floor Level | Apartment Type | Total Number Rooms* | Approx. Apt. Floor Area** | Approx. Area of Patio or Lanai** |
|---|---|---|---|---|---|---|
| 154 | 13—D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 155 | 13—D | 3 | 1 bdrm. Penthse. | 4 | 825 | 91 |
| 156 | 13—D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 157 | 13—D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 158 | 13—D | 3 | 1 bdrm. Penthse. | 4 | 825 | 91 |
| 159 | 16—D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 160 | 16—D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 161 | 16—D | 3 | 1 bdrm. Penthse. | 4 | 826 | 91 |
| 162 | 16—D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | |
| 163 | 16—D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 164 | 16—D | 3 | 1 bdrm. Penthse. | 4 | 826 | 91 |
| 165 | 16—D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 166 | 16—D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 80. | 91 |
| 167 | 16—D | 3 | 1 bdrm. Penthse. | 4 | 826 | 91 |

*Room count does not include bathroom.
**Areas are expressed in square feet.

Schedule C
— 5 —

7808300899

| Apt. No. | Building No.-Style | Floor Level | Apartment Type | Total Number Rooms* | Approx. Apt. Floor Area** | Approx. Area of Patio or Lanai** |
|---|---|---|---|---|---|---|
| 168 | 16-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 169 | 16-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 170 | 16-D | 3 | 1 bdrm. Penthse. | 4 | 826 | 91 |
| 171 | 16-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 172 | 16-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 173 | 16-D | 3 | 1 bdrm. Penthse. | 4 | 826 | 91 |
| 174 | 16-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 175 | 16-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 176 | 16-D | 3 | 1 bdrm. Penthse. | 4 | 826 | 91 |
| 177 | 16-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 178 | 16-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 179 | 16-D | 3 | 1 bdrm. Penthse. | 4 | 826 | 91 |
| 180 | 19-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 181 | 19-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |

*Room count does not include bathroom.
**Areas are expressed in square feet.

Schedule C
- 6 -

| Apt. No. | Building No.-Style | Floor Level | Apartment Type | Total Number Rooms* | Approx. Apt. Floor Area** | Approx. Area of Patio or Lanai** |
|---|---|---|---|---|---|---|
| 182 | 19-D | 3 | 1 bdrm. Penthse. | 4 | 826 | 91 |
| 183 | 19-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 184 | 19-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 185 | 19-D | 3 | 1 bdrm. Penthse. | 4 | 826 | 91 |
| 186 | 19-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 187 | 19-D | Upper & Lower | Twn.hse. 1 bdrm. | 3 | 800 | 91 |
| 188 | 19-D | 3 | 1 bdrm. Penthse. | 4 | 826 | 91 |
| 318 | 21-E | 2 | 2 bdrm. | 4 | 1300 | 155 |
| 319 | 21-E | 2 | 1 bdrm. | 3 | 850 | 73 |
| 320 | 21-E | 2 | 1 bdrm. | 3 | 830 | |
| 321 | 21-E | 2 | 1 bdrm. | 3 | 830 | 86 |
| 322 | 21-E | 2 | 1 bdrm. | 3 | 850 | 73 |
| 323 | 21-E | 2 | 2 bdrm. | 4 | 1300 | 155 |
| 324 | 21-E | 2 | 2 bdrm. | 4 | 1270 | 105 |
| 325 | 21-E | 2 | 2 bdrm. | 4 | 1270 | 105 |
| 326 | 21-E | 3 | 2 bdrm. | 4 | 1300 | 155 |
| 327 | 21-E | 3 | 1 bdrm. | 3 | 850 | 73 |

*Room count does not include bathroom.
**Areas are expressed in square feet.

Schedule C
- 7 -

| Apt. No. | Building No.-Style | Floor Level | Apartment Type | Total Number Rooms* | Approx. Apt. Floor Area** | Approx. Area of Patio or Lanai** |
|---|---|---|---|---|---|---|
| 328 | 21-E | 3 | 1 bdrm. | 3 | 830 | 86 |
| 329 | 21-E | 3 | 1 bdrm. | 3 | 830 | 86 |
| 330 | 21-E | 3 | 1 bdrm. | 3 | 850 | 73 |
| 331 | 21-E | 3 | 2 bdrm. | 4 | 1300 | 155 |
| 332 | 21-E | 3 | 2 bdrm. | 4 | 1270 | 106 |
| 333 | 21-E | 3 | 2 bdrm. | 4 | 1270 | 106 |
| 334 | 21-E | 4 | 2 bdrm. | 4 | 1300 | 155 |
| 335 | 21-E | 4 | 1 bdrm. | 3 | 850 | 73 |
| 336 | 21-E | 4 | 1 bdrm. | 3 | 830 | 86 |
| 337 | 21-E | 4 | 1 bdrm. | 3 | 830 | 86 |
| 338 | 21-E | 4 | 1 bdrm. | 3 | 850 | 73 |
| 339 | 21-E | 4 | 2 bdrm. | 4 | 1300 | 155 |
| 340 | 21-E | 4 | 2 bdrm. | 4 | 1270 | 106 |
| 341 | 21-E | 4 | 2 bdrm. | 4 | 1270 | 106 |
| 342 | 21-E | 5 | 2 bdrm. | 4 | 1300 | 155 |
| 343 | 21-E | 5 | 1 bdrm. | 3 | 850 | 73 |
| 344 | 21-E | 5 | 1 bdrm. | 3 | 830 | 86 |
| 345 | 21-E | 5 | 1 bdrm. | 3 | 830 | 86 |
| 346 | 21-E | 5 | 1 bdrm. | 3 | 850 | 73 |
| 347 | 21-E | 5 | 2 bdrm. | 3 | 1300 | 155 |
| 348 | 21-E | 5 | 2 bdrm. | 4 | 1270 | 106 |
| 349 | 21-E | 5 | 2 bdrm. | 4 | 1270 | 106 |

*Room count does not include bathroom.
**Areas are expressed in square feet.

Schedule C
--8--

SCHEDULE D

SIXTY-01

Apartment Values and Percentage of Undivided Interest

The following table shows the value and percentage of undivided interest in the common areas and facilities of each apartment in the First Phase.

| Apt. No. | Value | Percentage |
|---|---|---|
| 97 | $29,000 | 0.92 |
| 98 | 29,000 | 0.92 |
| 99 | 29,000 | 0.92 |
| 100 | 29,000 | 0.92 |
| 101 | 29,000 | 0.92 |
| 102 | 29,000 | 0.92 |
| 103 | 29,000 | 0.92 |
| 104 | 29,000 | 0.92 |
| 105 | 29,000 | 0.92 |
| 106 | 29,000 | 0.92 |
| 107 | 29,000 | 0.92 |
| 108 | 29,000 | 0.92 |
| 109 | 29,000 | 0.92 |
| 110 | 29,000 | 0.92 |
| 111 | 32,500 | 1.03 |
| 112 | 32,500 | 1.03 |
| 113 | 32,500 | 1.03 |
| 114 | 32,500 | 1.03 |
| 115 | 32,500 | 1.03 |
| 116 | 32,500 | 1.03 |
| 117 | 32,500 | 1.03 |
| 118 | 32,500 | 1.03 |
| 119 | 32,500 | 1.03 |
| 120 | 32,500 | 1.03 |
| 121 | 32,500 | 1.03 |
| 122 | 32,500 | 1.03 |
| 123 | 32,500 | 1.03 |
| 124 | 32,500 | 1.03 |
| 125 | 32,500 | 1.03 |
| 126 | 32,500 | 1.03 |
| 127 | 32,500 | 1.03 |
| 128 | 32,500 | 1.03 |
| 129 | 32,500 | 1.03 |
| 130 | 32,500 | 1.03 |

SCHEDULE D

3/23/78
S:TRC

| Apt. No. | Value | Percentage |
|---|---|---|
| 131 | $13,000 | 0.41 |
| 132 | 13,000 | 0.41 |
| 133 | 13,000 | 0.41 |
| 134 | 13,000 | 0.41 |
| 135 | 13,000 | 0.41 |
| 136 | 13,000 | 0.41 |
| 137 | 13,000 | 0.41 |
| 138 | 13,000 | 0.41 |
| 139 | 26,000 | 0.82 |
| 140 | 26,000 | 0.82 |
| 141 | 26,000 | 0.82 |
| 142 | 26,000 | 0.82 |
| 143 | 26,000 | 0.82 |
| 144 | 26,000 | 0.82 |
| 145 | 26,000 | 0.82 |
| 146 | 26,000 | 0.82 |
| 147 | 20,000 | 0.63 |
| 148 | 20,000 | 0.63 |
| 149 | 21,000 | 0.66 |
| 150 | 20,000 | 0.63 |
| 151 | 20,000 | 0.63 |
| 152 | 21,000 | 0.66 |
| 153 | 20,000 | 0.63 |
| 154 | 20,000 | 0.63 |
| 155 | 21,000 | 0.66 |
| 156 | 20,000 | 0.63 |
| 157 | 20,000 | 0.63 |
| 158 | 21,000 | 0.66 |
| 159 | 20,500 | 0.64 |
| 160 | 20,500 | 0.64 |
| 161 | 21,500 | 0.68 |
| 162 | 20,500 | 0.64 |
| 163 | 20,500 | 0.64 |
| 164 | 21,500 | 0.68 |
| 165 | 20,500 | 0.64 |
| 166 | 20,500 | 0.64 |
| 167 | 21,500 | 0.68 |
| 168 | 20,500 | 0.64 |
| 169 | 20,500 | 0.64 |
| 170 | 21,500 | 0.68 |
| 171 | 20,500 | 0.64 |
| 172 | 20,500 | 0.64 |
| 173 | 21,500 | 0.68 |
| 174 | 20,500 | 0.64 |
| 175 | 20,500 | 0.64 |
| 176 | 21,500 | 0.68 |
| 177 | 21,000 | 0.66 |
| 178 | 21,000 | 0.66 |
| 179 | 22,000 | 0.69 |
| 180 | 21,000 | 0.66 |

8/23/78
S:TRC

SCHEDULE D

7808306899

| Apt. No. | Value | Percentage |
|---|---|---|
| 181 | $21,000 | 0.66 |
| 182 | 22,000 | 0.69 |
| 183 | 21,000 | 0.66 |
| 184 | 21,000 | 0.66 |
| 185 | 22,000 | 0.69 |
| 186 | 21,000 | 0.66 |
| 187 | 21,000 | 0.66 |
| 188 | 22,000 | 0.69 |
| 318 | 35,250 | 1.11 |
| 319 | 21,750 | 0.69 |
| 320 | 21,500 | 0.68 |
| 321 | 21,500 | 0.68 |
| 322 | 21,750 | 0.69 |
| 323 | 35,250 | 1.11 |
| 324 | 34,250 | 1.08 |
| 325 | 34,250 | 1.08 |
| 326 | 35,750 | 1.13 |
| 327 | 22,250 | 0.70 |
| 328 | 22,000 | 0.69 |
| 329 | 22,000 | 0.69 |
| 330 | 22,250 | 0.70 |
| 331 | 35,750 | 1.13 |
| 332 | 34,750 | 1.10 |
| 333 | 34,750 | 1.10 |
| 334 | 36,250 | 1.13 |
| 335 | 22,750 | 0.72 |
| 336 | 22,500 | 0.71 |
| 337 | 22,500 | 0.71 |
| 338 | 22,750 | 0.72 |
| 339 | 36,250 | 1.13 |
| 340 | 35,250 | 1.11 |
| 341 | 35,250 | 1.11 |
| 342 | 36,750 | 1.16 |
| 343 | 23,250 | 0.73 |
| 344 | 23,000 | 0.73 |
| 345 | 23,000 | 0.73 |
| 346 | 23,250 | 0.73 |
| 347 | 36,750 | 1.16 |
| 348 | 35,750 | 1.13 |
| 349 | 35,750 | 1.13 |
| | $3,169,000 | 100.00 |

If Other Parcels are added to the condominium by expansion into a Subsequent Phase or Phases or by merger, the total value added to the condominium for each of the Other Parcels will be the following:

| | | | | |
|---|---|---|---|---|
| Parcel B | $2,458,000 | | Parcel E | $1,868,000 |
| Parcel C | $3,400,000 | | Parcel F | $2,603,500 |
| Parcel D | $2,774,500 | | Parcel G | $1,827,000 |
| | | | Parcel H | $1,806,500 |

8/23/78

S:TRC                                 SCHEDULE D

SCHEDULE E

The common areas and facilities referred to in Section 26.5 of the foregoing Declaration are the following:

ON PARCEL A

Exit gate to 140th Avenue N.E.

ON PARCEL B

Main entry gate.

Outdoor swimming pool and adjoining restroom and laundry facilities.

ON PARCEL C

Outdoor swimming pool and adjoining restroom and laundry facilities.

ON PARCEL D

Outdoor swimming pool and adjoining restroom and laundry facilities.

Two gates for automobile entrance and exit, one to 140th Avenue N.E. and one to N.E. 70th Street.

Recreational vehicle and trailer storage shed.

ON PARCEL E

Automobile entrance and exit gate to N.E. 70th Street.

Recreational vehicle and trailer storage shed.

ON PARCEL F

Recreational vehicle and trailer storage shed.

ON PARCEL G

Maintenance shop and offices.

ON PARCEL H

Stables and corral.

Recreational vehicle and trailer storage shed.

SCHEDULE E
- 1 -

Tennis courts.

Administration building and clubhouse.

Health club building with adjacent indoor-outdoor swimming pool and handball court.

Artificial waterfall.

ON EACH AND EVERY PARCEL all of the following:

Roadways.

Parking areas and pathways.

Lakes.

Over-water walkways.

Docks.

Perimeter pathways.

Water pumps and water filtering and circulation system.

Equipment and facilities for the water, sewer, electricity, cable television, telephone, and other utility systems.

Internal communication.

Fire alarm.

Electronic gate control systems.

Grounds, landscaped areas, picnic areas, outdoor lighting, fences, and all other exterior facilities and conveniences that are not a part of any apartment building.

PORTION OF THIS DOCUMENT ARE POOR QUALITY FOR FILMING

SCHEDULE E
-2-